412 So.2d 1353 (1982)
STATE of Louisiana
v.
Clifton LEWIS.
No. 81-KA-2540.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied May 14, 1982.
*1354 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., R. Greg Fowler, Asst. Dist. Atty., for plaintiff-appellee.
Helen Ginger Roberts, and Edward E. Roberts, of Gravel, Robertson & Brady, Alexandria, for defendant-appellant.
FRED S. BOWES, Justice Pro Tem.[*]
The defendant, Clifton Lewis, was convicted by a jury of forcible rape in violation of R.S. 14:42.1. The sentence was twenty-four years at hard labor; the first eight years without benefit of parole, probation or suspension of sentence. On appeal, defendant relies on five assignments of error for reversal of his conviction and sentence. Assignment of Error Number 4 was neither briefed nor argued, and therefore it is considered abandoned.
On December 13, 1980, at approximately 7:00 p. m., Debra Rose Lambert had returned from taking her live-in companion to work when she was confronted by a masked man in her house. The intruder hit her over the head and, after she fell to the floor, he started ripping off her clothes. Although her assailant was masked with a loose-fitting flour sack, Ms. Lambert recognized him by his voice and build as her next door neighbor, Clifton Lewis, and called him by name several times. After beating Ms. Lambert with the butt of a rifle, Lewis then marched her back to the bedroom where he raped her. When Lewis left, she went to a neighbor's house where the police were called. On the basis of Ms. Lambert's report, the authorities arrested Lewis later that morning. At the station house, the defendant gave two written statements, the second of which amounted to a full confession of the sexual assault on Ms. Lambert.

Assignment of Error Number 1
By this assignment, the defendant contends that the trial court erred in ruling that the defendant's statements were freely and voluntarily given and that the waiver of his rights was made knowingly and intelligently.
*1355 Defendant bases his argument against the knowing and intelligent waiver of his rights on the testimony of Dr. James Quillin, a clinical psychologist, who examined Lewis to determine his mental capacity. Dr. Quillin concluded that Lewis was a borderline retardee, ranking in the fourth to ninth percentile of the general population. His mental age was about eleven or twelve years old. Although defendant, in his brief, noted that Dr. Quillin's report indicated that Lewis' mental functions were like someone with severe brain damage, he failed to point out that part of Dr. Quillin's testimony which explained the test results. Dr. Quillin testified that when the original data is combined with the test results, it becomes clear that, although defendant was in the borderline area of impairment in each test, there was no severe brain damage. Essentially, his brain was fairly slow.
Responding to the questions regarding defendant's ability to understand his Miranda warnings and waive his constitutional rights, Dr. Quillin testified that Lewis understood all of the words in the standard waiver form that was read to him, but he had serious doubts about whether he could understand some of the constitutional rights which are implicit in the waiver form. We feel that there are many people in the general population who would not understand all the constitutional rights implicit in a waiver form. This inability of the defendant does not necessarily render his waiver involuntary.
There was additional testimony by Dr. Quillin that the defendant could not read or write very well. Officer Dennis Richards of the Rapides Parish Sheriff's Department testified that at least three times before taking any statement, he read Lewis his Miranda warnings and carefully explained the waiver of rights form, including his constitutional rights, with the knowledge that Lewis could not read or write at all. Officer Richards then assured the court that he felt that the defendant understood those rights and signed the waiver form freely, voluntarily, and without force, threats, or intimidation. He further stated that nothing was promised to the defendant for waiving his rights and making an inculpatory statement. Although the interview was conducted in two sessions, it was the defendant who terminated the first interview and the defendant who initiated the second interview. Thus, the statement was elicited, not only with the cooperation of Lewis but also at his request, as clearly appears from the written statements themselves.
Although Dr. Quillin testified that he didn't think Lewis genuinely understood all of his constitutional rights as contained in the waiver, the trial judge weighed all the factors and ruled that the defendant did make a knowing and intelligent waiver of his rights and that the statement was freely and voluntarily given. The trial judge's decision was based on the jurisprudence of this state where this court has repeatedly held that moderate mental retardation and low intelligence do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Anderson, 379 So.2d 735 (La.1980).
Thus, this court has emphasized that the critical factor is whether or not the defendant was able to understand the rights being explained to him.
In light of Dr. Quillin's testimony, the State had the burden of proving that the defendant's mental defect did not preclude him from giving a free and voluntary confession with a knowledgeable and intelligent waiver of his rights. State v. Coleman, 369 So.2d 1286 (La.1979). In this case, the three officers who dealt with Lewis, from the time of arrest through the taking of his statements, all testified that they had read him his rights. Officer Richards testified that since he thought that the defendant could not read or write, he was especially careful to explain the rights read from the waiver form to him, as well as the meaning of the waiver of rights. The defendant responded affirmatively to all questions regarding his understanding. The testimony adduced at the motion to suppress and at trial supports the conclusion *1356 that, although the defendant, Clifton Lewis, was in a custodial environment, his confession was given freely, knowingly, and intelligently.
This assignment is without merit.

Assignment of Error Numbers 2 & 3
By these assignments, the defendant contends that the trial court erred in permitting repeated prosecutorial references to the psychological impact of this incident upon the victim. During the prosecutor's direct examination of the victim, Debra Lambert, he asked her if she had sought counseling of any type since this incident. Defense counsel objected that this information was irrelevant and inadmissible. The court sustained the objection. Later, defense counsel moved for a mistrial under La.C.Cr.P.Art. 770(1), which was denied.
During closing argument in rebuttal, the prosecutor again referred to the effects on the victim after the attack by saying: "We don't know how it affected her subsequent to the attack, but obviously the law was violated." Defense counsel objected to the remark and the judge instructed the jury to disregard it.
Defendant claimed that the remarks were prejudicial and violated La.C.Cr.P.Art. 774. Additionally, defendant argued that prejudice should be presumed and the burden should rest on the prosecution to prove that the inflammatory remarks did not contribute to the verdict.
Under La.C.Cr.P.Art. 771, the judge is within his discretion, in the absence of clear prejudice, to admonish the jury to disregard a prosecutor's objectionable remark. State v. Jackson, 396 So.2d 1291 (La.1981). In this case, there was no clear prejudice to the verdict, given the victim's identification of her assailant as the defendant, and the admission at trial of his inculpatory statement. Any error that may have occurred was cured by the judge's admonition to the jury.
These assignments are without merit.

Assignment of Error Number 5
By this assignment, defendant contends that the sentence of twenty-four years imprisonment, for the conviction on the lesser offense of forcible rape, is excessive because the trial judge failed to mention the mitigating factors when imposing the sentence, as required by La.C.Cr.P.Art. 894.1. Defendant contends that defense counsel's arguments which review the defendant's miserable childhood, coupled with his alcohol abuse from age thirteen and his low mental capacity, were not mentioned by the trial judge when sentencing the defendant.
While the trial court need not articulate every aggravating and mitigating circumstance presented in 894.1, the record must reflect that it adequately considered these guidelines in particularizing the sentence to the defendant. State v. Vaughn, 378 So.2d 905 (La.1979); State v. Franks, 373 So.2d 1307 (La.1979). Both the prosecutor and defense counsel presented arguments that dealt with mitigating and aggravating circumstances at the sentencing hearing, which we must presume the judge took into consideration, and, before sentencing the defendant, the judge mentioned the seriousness of the crime of forcible rape as established by the legislature when they set the maximum prison time at forty years. The defendant received twenty-four years, eight of which were without benefit of parole, probation or suspension of sentence. In addition, the judge mentioned the terror of the victim produced by her masked assailant when he beat her about the head and body with the gun stock, requiring stitches, then ripping off her clothes, marching her through the house at gunpoint, tying her up and raping her. The judge felt that the vicious nature and seriousness of the crime demanded a sentence in the upper range. Additionally he noted that, although the defendant was young (18) and this was his first felony conviction, these considerations did not outweigh the trauma to the victim when deciding on the amount of time.
As a general rule, a sentence is excessive "if it is grossly out of proportion to the severity of the crime, or it is nothing more than the purposeless and needless imposition *1357 of pain and suffering." State v. Bonanno, 384 So.2d 355 (La.1980). Although the trial judge did not specifically mention La.C.Cr.P.Art. 894.1 when sentencing the defendant, the record indicates that he was taking cognizance of it when he individualized the sentence imposed by considering the aggravating and mitigating circumstances of the case. State v. Vaughn, 378 So.2d 905 (La.1979). He took into account the pleas for mercy on behalf of the defendant and the excellent memorandum which was prepared and filed by his attorney. He also considered that the offense of forcible rape is punished severely by the legislature and that the crime committed by the defendant was an extremely vicious crime. In State v. Austin, 399 So.2d 158 (La.1981), a twenty-five year sentence for forcible rape was affirmed by this court for a crime that displayed far less viciousness. The court ultimately concluded that any lesser sentence would deprecate the seriousness of the offense. The same can be said to be true in this case.
On the record left by the trial court of sentencing, and given the viciousness of the defendant's attack on the victim, the imposition of a twenty-four year sentence does not appear grossly disproportionate to the offense. State v. Bonanno, supra.
Accordingly, this assignment is without merit.

DECREE
For the above reasons, conviction and sentence of the defendant are affirmed.
DIXON, C. J., concurs.
NOTES
[*] Judges Fred S. Bowes and Nestor L. Currault, Jr. of the Twenty-Fourth Judicial District Court and Edward A. Dufresne, Jr. of the Twenty-Ninth Judicial District Court participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Watson.