456 So.2d 979 (1984)
STATE of Louisiana
v.
Willie FOLEY.
No. 83-KA-2306.
Supreme Court of Louisiana.
May 14, 1984.
Rehearing Denied October 25, 1984.
*980 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Mary Charlotte McMullan, Jack Peebles, Charles P. Ciaccio, Asst. Dist. Attys., for plaintiff-appellee.
Elizabeth Cole, Roland Belsome, New Orleans, Tulane Law School Clinic, for defendant-appellant.
WATSON, Justice.
Willie Foley was indicted by the grand jury[1] for aggravated rape in violation of LSA-R.S. 14:42.[2] A unanimous jury found defendant guilty as charged and he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal, defendant urges two assignments of error for the reversal of his conviction and sentence.[3]

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in denying his motion to quash, arguing that he was entitled to a hearing before being tried as an adult rather than a juvenile.
Foley, 15½ years old at the time of the crime, asserts that he was first indicted on September 25, 1979, but the charge was nolle prosequied on July 2, 1980.[4] In the interim, review of the trial court's refusal to quash the indictment and transfer Foley to juvenile court for a status hearing was denied.[5]
Foley was re-indicted for aggravated rape on November 12, 1980. Although defendant did not reurge the right to a transfer hearing, he argues in brief that failure to hold such a hearing deprived him of due *981 process. Defendant maintains that he was overcharged to vest jurisdiction in the district court, and should have been charged, at most, with forcible rape, a crime within juvenile court jurisdiction. The argument ignores evidence that defendant abducted and raped his victim at knifepoint and threatened to kill her if she resisted.
LSA-R.S. 13:1570(A)(5), effective September 12, 1980, expressly provides that juvenile court jurisdiction does not extend to a juvenile "who, after having become fifteen years of age or older is charged with having committed ... aggravated rape." The juvenile court was statutorily divested of jurisdiction when Foley was first indicted for aggravated rape.
LSA-R.S. 13:1570(A)(5) is a valid exercise of state police power. Classifications by age and seriousness of the offense are not arbitrary or capricious; they bear a rational relationship to the state's legitimate interest in giving the public enhanced protection from more violent felons. State v. Leach, 425 So.2d 1232 (La.1983); State v. Perique, 439 So.2d 1060 (La.1983).
The legislature has decided that fifteen year olds charged with aggravated rape should be treated as adults. Within this statutory framework, the district attorney controls criminal prosecutions by determining whom, when, and how he will prosecute. LSA-C.Cr.P. art. 61; State v. Perique, supra.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that the life sentence mandated by LSA-R.S. 14:42 is unconstitutionally cruel, unusual and excessive under the Eighth Amendment to the United States Constitution, and Article I, § 20 of the Louisiana Constitution under the circumstances of his case.
The mandatory life sentence for aggravated rape is a valid exercise of the state legislature's prerogative to determine the length of sentence for crimes classified as felonies. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Farria, 412 So.2d 577 (La.1982); and State v. Talbert, 416 So.2d 97 (La.1982).
Relying on Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), defendant argues that mandatory sentences are subject to judicial scrutiny for excessiveness and his sentence is disproportionate because of: (1) his age at the time of the offense, and (2) the fact that the victim suffered no lasting psychological damage.
Solem v. Helm, supra, held that a life sentence without benefit of parole imposed on a defendant who had six prior felony convictions was unconstitutionally excessive. Helm wrote a check on a bank at which he had no account. Had he been a first offender, his maximum sentence would have been five years imprisonment and a $5,000 fine. The life sentence was imposed by operation of the South Dakota recidivist statute which specifically excluded the possibility of parole.
Helm[6] held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.... But no penalty is per se constitutional." 103 S.Ct. at 3009-3010. The Helm court set forth the following objective factors to guide reviewing courts: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentence imposed for commission of the same crime in other jurisdictions. While requiring proportionality analysis, even in noncapital cases, Helm did point out that, "[o]utside the context of capital punishment, successful *982 challenges to the proportionality of particular sentences [will be] exceedingly rare." 103 S.Ct. at 3009.
Applying these factors to this crime and sentence, defendant's life sentence is not excessive. As to the gravity of the offense, the legal definition of aggravated rape in LSA-R.S. 14:42(2) is virtually identical to that of forcible rape.[7] Distinctions are drawn based on the degree of force and the resistance of the victim. The jury determines the permissible punishment by a verdict which fits the crime by assessing the degree of force employed. State v. Willie, 422 So.2d 1128 (La.1982).
Defendant does not expressly contend that there is insufficient evidence to convict him of aggravated rape but cites numerous forcible rape cases, and argues that their facts are no more egregious than those here. However, the evidence adduced at this trial justifies the jury's verdict.
Early in the morning on August 27, 1979, the sixteen year old victim and her thirteen year old companion went on bicycles to purchase donuts. They were followed by two black males in a gray TransAm. When the car pulled alongside the victim, its driver, the defendant, repeatedly asked her name. The car turned off just before the bicyclists reached the donut shop.
As the two children returned home, the gray TransAm resumed following them, defendant now occupying the passenger seat. Although the bicyclists attempted to elude their pursuers by turning down a side street, the driver cut off the victim's escape. Her bicycle fell into a drain and she could not run because her sock got caught in its chain. Foley jumped from the car, grabbed the victim's hand and put his knife in her face. He told her that if she did not get into the car, he would hurt her.
The victim attempted to fight off her attacker but was forced into the car. Once inside the car, Foley told the victim to undress. Otherwise, he threatened that "I'm going to jugg you with this knife". (Tr. 125) Foley raped the victim while Robinson drove to a nearby apartment complex parking lot. Throughout the rape, Foley held his knife to the victim's throat. At one point the victim spotted a garbage truck and screamed for help, but she could not be heard over the volume of the car radio. When she screamed, Foley pulled her arm around her back and again said that he would kill her if she did not remain quiet. The victim testified that Foley raped her three times while Robinson raped her once or twice.
After the victim was kidnapped, her companion contacted the police, who were at the crime scene when the abductors returned with the victim. Spotting the police, the rapists pushed the victim from the car and sped away. The police picked up the victim who was "crying very hysterical" and apprehended Foley and Robinson several blocks away.
Using the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard of appellate review and viewing the evidence in the light most favorable to the prosecution, we conclude that the jury could easily have found beyond a reasonable doubt that defendant was guilty of aggravated rather than forcible rape.
Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), held that a death sentence for rape is excessive punishment under the Eighth Amendment, but did not discount the seriousness of the crime. "It is highly reprehensible both in a *983 moral sense and in its almost total contempt... of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established. Short of homicide, it is the ultimate violation of self." 433 U.S. at 597, 97 S.Ct. at 2869, 53 L.Ed.2d at 992, 993. Aggravated rape inflicts mental and psychological damage to its victim and undermines the community sense of security. Defendant's argument that his victim has suffered no lasting psychological damage is unsubstantiated. Aggravated rape deserves a harsh penalty; it is one of the most violent felonies a person can commit.
Defendant's argument that his age requires a lesser sentence is without merit. Despite his lack of an adult criminal record, Willie Foley is no stranger to the justice system. At the time of the offense, he had just escaped from Rivarde Juvenile Home where he had been detained on charges of simple burglary, resisting arrest and simple battery. Foley was the principal aggressor in this crime. He initially accosted the victim, kidnapped her, raped her first and then repeatedly raped her. The circumstances here do not militate against the legislature's determination that fifteen year old aggravated rapists are to be treated as adults, without varying the punishment according to the age of the accused.[8]
Helm requires that the sentence be compared with that which could be imposed on other criminals in this state. Louisiana statutes mandate life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for the commission of the following crimes:
(1) LSA-R.S. 14:30, First Degree Murder, where the jury does not unanimously recommend the death penalty;
(2) LSA-R.S. 30.1, Second Degree Murder;
(3) LSA-R.S. 14:42, Aggravated Rape;
(4) LSA-R.S. 14:44, Aggravated Kidnapping; and
(5) Certain offenses under the habitual offender law.[9]
Except for criminal conduct subject to sentencing under the habitual offender statute, mandatory life sentences are imposed only for violent crimes against the person. Louisiana's statutory scheme recognizes five grades of culpability for illegal sexual conduct ranging from aggravated rape to sexual battery. This scheme is complimented by the responsive verdict *984 system.[10] Louisiana does not single out aggravated rape for disproportionate punishment.
Compared with the sentencing statutes of other states for the same crime, Louisiana's statute is not facially excessive. Many jurisdictions (not Louisiana) have adopted, with modifications, the Model Penal Code classifications. Under this Code, rape under these circumstances would be classified as a first degree felony. The ordinary term for such a felony is imprisonment to a minimum term of not less than one year nor more than ten years and a maximum term of life. In Alabama, for example, rape in the first degree is a Class A felony punishable either by life imprisonment or a term of ten to ninety-nine years. If a deadly weapon is used in the commission of the crime, punishment can not be less than twenty years imprisonment. Ala. Code tit. 13A, §§ 13A-6-61, 13A-5-6. In Missouri and Michigan, a life sentence is possible but not mandatory. Mo.Rev.Stat. §§ 566.030, 558.011 and MSA § 28.788(2) [M.C.L.A. § 750.520]. Maryland requires that a person convicted of first degree rape be subject to imprisonment for no more than the period of his natural life. Md. Crim.Law Code Ann. § 462. In Delaware, rape is a Class A felony, carrying a punishment of life imprisonment which cannot be reduced or suspended by the court. Del. Code tit. 11, §§ 764, 4204, 4205.
Thus, while not all jurisdictions surveyed mandate life imprisonment, all view aggravated rape as a serious crime meriting substantial punishment. Unlike the defendant in Helm who could have received his life sentence in only one other state, Foley's sentence could have been meted out in other jurisdictions.[11]
Willie Foley's life sentence is not disproportionate to his crime and not prohibited as excessive by either the United States or Louisiana Constitutions.
For the foregoing reasons, the conviction and sentence of defendant, Willie Foley, are affirmed.
AFFIRMED.
DENNIS and LEMMON, JJ., concur.
DIXON, C.J., concurs.
LSA-R.S. 13:1570 is a valid criminal procedural statute, but it is not an "exercise of state police powers."
CALOGERO, J., concurs in part, dissents in part, and assigns reasons.
CALOGERO, Justice, concurring in part and dissenting in part.
I concur in the majority opinion insofar as it affirms defendant's conviction, particularly in holding that defendant was not entitled to a transfer hearing in juvenile court. But I dissent from the determination that the sentence imposed on this retarded fifteen year old, imprisonment without parole eligibility for the remainder of his natural life, under the facts and circumstances of this case, is not excessive.
Defendant argued, in assignment of error number one, that the trial court erred in denying his motion to quash, because he was entitled to a transfer hearing in juvenile court before the state proceeded against him as an adult in district court. The majority finds no merit in that contention relying on La.R.S. 13:1570(A)(5), "effective September 12, 1980." While I concur in the majority's determination that the defendant was not entitled to a transfer hearing in juvenile court, and thus the motion to quash was properly denied, I take issue with the majority's reasons.
*985 The majority relies on a statute which it notes to be "effective September 12, 1980." The crime with which defendant is charged was committed prior to that date on August 27, 1979. Thus, the statute relied on by the majority is not applicable to the instant offense at all.
However, I concur because the result is the same when the issue is considered under the applicable law in effect at the time the offense was committed.
Article V, § 19 of the 1974 Louisiana Constitution, in effect on August 27, 1979, the date of the instant offense, provided in part:[1]
Section 19. Except for a person fifteen years of age or older who is alleged to have committed a capital offense or attempted aggravated rape, the determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be exclusively pursuant to special juvenile procedures which shall be provided by law.
The implementing legislation, La.R.S. 13:1570, in effect on the date the instant offense was committed (as opposed to as amended in 1980) provided in pertinent part:
Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
(A) Concerning any child whose domicile is within the parish or who is found within the parish:
(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age, is charged with having committed a capital crime, or a crime defined by any law defining attempted aggravated rape ....
The crime of aggravated rape, with which this defendant was charged, was not a capital crime at the time of the commission of this offense. A literal interpretation of the constitutional and statutory provisions would allow the initiation of prosecution in the district court only when juveniles of the minimum age were accused of committing a capital crime or the crime of attempted aggravated rape. However, this Court concluded in State ex rel. Coco, 363 So.2d 207 (La.1978) that such an interpretation would create an incongruous situation wherein the more serious offense of aggravated rape would be relegated to the jurisdiction of the juvenile court while the lesser included offense of attempted aggravated rape would fall to the district court wherein adult procedures would apply. This Court concluded in Coco, supra, that the intent of the drafters of the constitutional provision was to include aggravated rape within the jurisdiction of the district court. It was further held that jurisdiction vested in the district court upon indictment. Thus, a juvenile, falling in this time period and under these provisions, is not entitled to a transfer hearing in juvenile court. For these reasons, I concur as relates to this aspect of the case.
In assignment of error number four, the defendant argued that the imposition of a life sentence without parole eligibility, as against him, was constitutionally excessive. The majority concludes that the sentence was not excessive. However, considering this defendant, the circumstances of this offense, the sentences of other similarly situated offenders, and similar sentences for other offenses, I disagree with the majority in this case.
Before I address what was discussed in the majority opinion in this regard, I feel constrained to point out what was not discussed. For it is in part through consideration of what was omitted from the opinion that one can better understand and consider defendant's argument on this issue.
Defendant Willie Foley was fifteen years old at the time this offense was committed, August 27, 1979. He lived at home, throughout his childhood, with his mother. He has never known his father. As provided in a psychiatric evaluation of Foley, he "has a very limited intelligence." His I.Q. *986 range is 62 to 79. Foley has no history of alcohol or drug abuse. A pre-sentence investigation was not conducted. Thus it cannot be stated with certainty what his prior juvenile record might have indicated, except that he apparently did have a record.
Foley's main problem, insofar as his ultimate re-prosecution is concerned (after the district attorney had earlier entered a nolle prosequi on the same charge) may well have been his choice of companions on the night of this offense. On the night in question, Foley was riding around with a companion by the name of Eduardo Robinson. It was approximately 3:00 a.m. when Foley and Robinson saw the victim, a sixteen year old female, and her twelve year old male companion, riding their bicycles down Carrollton Avenue. Eventually, after harassing the two for a while, Foley threatened the female with a letter opener (not a knife, as the majority suggests) and forced her into the car. Robinson drove the car a few blocks away and allegedly Foley raped the victim three times, and Robinson raped her twice. Thereafter, the victim put her clothes back on. However demeaning, traumatic and offensive the experience for this victim, it appears at least that she did not remain in fear of her life:
Q. After all of that, you put your clothes back on?
A. Yeah because I was ready to go and they wasn't going to do me nothing.
After the victim dressed, Robinson started to drive her back to where she left her bicycle. When they approached that location they saw a police car and turned. They left the victim at a nearby Winn-Dixie, then tried to escape. The officers picked up the girl and followed the Robinson vehicle until it crashed. Robinson got out of the vehicle and tried to escape on foot. The defendant remained seated in the passenger side of the vehicle. Both defendant and Robinson were apprehended and arrested.
On September 25, 1979, both Foley and Robinson were indicted by the grand jury, thus given adult treatment as permitted by law. They remained in custody for some nine months until, on July 2, 1980, the Orleans Parish District Attorney's Office entered a nolle prosequi of the charge. Both were released. On October 23, 1980, in an unrelated matter, a Ms. Cynthia Schwartz was murdered in uptown New Orleans. Because of the horror it evoked, as Ms. Schwartz was simply outside in her garden when brutually murdered, the murder was highly publicized. Eduardo Robinson (Foley's co-perpetrator in the instant offense) became a suspect in the Schwartz murder and was eventually arrested for, and charged with, that murder.[2] Thereafter, on November 11, 1980, Robinson and defendant Willie Foley were reindicted for the aggravated rape of the victim in this case.
In brief, in assignment of error number two, Foley contends that the trial court erred in denying his motion to quash based on untimeliness and prosecutorial vindictiveness.[3] His complaint is that he suffered a denial of due process when, because of Robinson's later notoriety, he, Foley, was re-charged after earlier indictment, nine months of pre-trial incarceration, dismissal of the charge and release from jail. Foley also argues here that the prosecutor overcharged him with aggravated rape when the circumstances of the crime indicate, at most, forcible rape, simply because of a desire to charge Robinson (and therefore Foley as well) in the district court rather than juvenile court.
The majority has chosen not to discuss or consider this assignment of error. (See footnote three in the majority opinion.) The assignment is argued in brief. No pleading or record in this Court indicates that it was abandoned, although as noted at footnote three to this dissent, defendant deleted reference in all of his pleadings to *987 the words "prosecutorial vindictiveness," while continuing to complain of the denial of the motion to quash based on "untimeliness." It deserves discussion and merits resolution by this Court. For my part, the assignment of error does not warrant reversing defendant's conviction or sentence. The substance of the complaint, however, does have some bearing on defendant's assignment of error number four, wherein he argues that the life sentence without parole eligibility, imposed in this case, is excessive.
Relative to his assignment of error number four, defendant is not arguing that the penalty provision for aggravated rape, La. R.S. 14:42, is per se unconstitutionally excessive. Nor do I believe it to be so. Defendant is arguing, and in my view with some merit, that considering the peculiar circumstances of this case, including his personal characteristics and the facts of the offense, when compared with similar cases, the life sentence without parole eligibility is excessive.
The majority properly relies on the recent United States Supreme Court case, Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) in considering defendant's arguments under the Eighth Amendment of the United States Constitution. Therein, as noted by the majority, the Court held:
[A] criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional. As the Court noted in Robinson v. California, 370 U.S., [660] at 667, [82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) ] a single day in prison may be unconstitutional in some circumstances. (emphasis provided) Id. at 3009.
As also noted by the majority, the Court in Helm set forth objective factors to guide reviewing courts. The Court stated:
In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. Id. at 3010-11.
We likewise have our own well settled principles of appellate review of sentences under our state constitution. Article I, § 20 of the 1974 Louisiana Constitution prohibits the imposition by law of excessive punishment. In accordance therewith, in State v. Sepulvado, 367 So.2d 762 (La. 1979), we held that "the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction." This Court has also recognized that a punishment is unconstitutionally excessive if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. State v. Lathers, 444 So.2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Sims, 410 So.2d 1082; (La.1982); State v. Johnson, 406 So.2d 569 (La.1981); State v. Kersey, 406 So.2d 555 (La.1981); State v. Snider, 406 So.2d 209 (La.1981); State v. Russell, 397 So.2d 1319 (La.1981); State v. Williams, 397 So.2d 1287 (La.1981); State v. Beavers, 382 So.2d 943 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980).
The majority misconstrues defendant's reliance on numerous forcible rape cases as an argument that he was not properly convicted of aggravated rape. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the majority concludes that "the jury could easily have found beyond a reasonable doubt that defendant *988 was guilty of aggravated rather than forcible rape."
Actually defendant's argument is not that the evidence adduced fails to support a conviction for aggravated rape but rather that because of the similarity of the definitions of aggravated rape and forcible rape the evidence could have just as well supported a conviction of forcible rape. The existence of these very similar criminal statutes, defining aggravated rape and forcible rape,[4] with significantly different penalties (life without benefit for aggravated rape; and forty years, at least two without benefit, for forcible rape) contributes to widely varying punishments for similar conduct (and oftentimes a lesser punishment for more egregious conduct).
State v. Rash, 444 So.2d 1204 (La.1984) brings defendant's argument into focus most vividly. In that case Rash was convicted of aggravated rape (and thus given a life sentence without parole eligibility) while his co-perpetrator in a separate trial was found guilty of forcible rape (and sentenced to thirty-five years, two without benefit of parole), despite the fact that it was the co-perpetrator who actually raped the victim. In comparing defendant's case to other cases we find the following. In State v. Dawson, 392 So.2d 445 (La.1981), the defendant therein was charged with aggravated rape, but was convicted of forcible rape and sentenced to twenty years imprisonment at hard labor, two without benefit of parole, probation or suspension of sentence. Dawson kidnapped a thirteen year old child by holding a knife to her throat, took her to a secluded place in his truck and raped her. Dawson had a previous record of sex crimes. In State v. Lewis, 412 So.2d 1353 (La.1982) defendant was convicted of forcible rape and sentenced to twenty-four years at hard labor, eight to be served without benefit of parole, probation or suspension of sentence. Lewis made an unauthorized entry into the victim's house, hit her over the head, ripped off her clothes, beat her with the butt of a rifle, and raped her. The head wounds required stitches. The victim was also made to march around the house naked at gunpoint, tied up and raped.[5]
In contrast the facts attending the charged offense in this case were significantly less egregious and yet defendant's penalty is the absolute maximum, short of execution.
As already stated, defendant threatened the victim with a letter opener. The victim was allegedly raped three times by the defendant and twice by the defendant's companion, over a period of about thirty minutes. She was then allowed to dress and she was being returned to where she had been picked up when the police intervened. Defendant was fifteen years old, while the victim was sixteen. In an examination of the victim conducted immediately after the incident, the coroner found no signs of trauma and no bruises in the area surrounding the vagina and the rectum. The victim was described by the coroner as an alert active party in no apparent distress, without signs of trauma, bruises, abrasions or lacerations. Foley was fifteen years old at the time of the offense and has an I.Q. range of 62 to 79. No PSI was conducted and we have no record evidence *989 of a juvenile record, although there are indications that he has one. Considering the facts of the crime and the characteristics of the defendant, in comparison with other similar cases, this case is simply not among the more serious rapes which have been committed, nor is this defendant among the worst offenders encountered. Yet, short of the death penalty, he has received the most severe sentence possible in this state, or in any other state, life imprisonment without the benefit of parole, probation or suspension of sentence.
As can be seen, we are too often left, in rape cases, with the anomalous result that the penalty imposed on some individuals (albeit legislatively mandated) is grossly disproportionate to their criminal conduct. I am of course mindful of the reprehensible nature of the crime of rape, whether aggravated or forcible, or for that matter, even simple rape. And there is no doubt that generally, a life sentence is the appropriate sentence to be imposed on one convicted of aggravated rape. However, it is constitutionally mandated that "a criminal sentence must be proportionate to the crime ...." Solem v. Helm, 103 S.Ct. 3009. And it is the lack of proportionality between the sentence imposed and the criminal conduct exhibited in this case that taints this sentence with unconstitutionality.
The excessiveness of the sentence imposed in this case is made even more clear when it is compared with those imposed for the same crime in other jurisdictions. The sentence imposed here stands alone as the most severe. The majority cites no other state which imposes a minimum sentence of life imprisonment for the same offense, much less a life sentence without parole eligibility. Granted there are some states which allow the imposition of a life sentence, but even that is far less severe than mandating such a sentence in all cases, as is the situation here in Louisiana.
The majority conclusion that "Foley's sentence could have been meted out in other jurisdictions," is not supported by the authorities cited. In fact, in footnote 10 the majority admits that the without benefit feature of our statute is unique.
The Court in Solem v. Helm, noted the significant difference between a sentence simply to life imprisonment and a sentence to life imprisonment without the possibility of parole:
Helm's present sentence is life imprisonment without possibility of parole. Barring executive clemency, Helm will spend the rest of his life in the state penitentiary. This sentence is far more severe than the life sentence we considered in Rummel v. Estelle [445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382]. Rummel was likely to have been eligible for parole within 12 years of his initial confinement, a fact on which the Court relied heavily. Helm's sentence is the most severe punishment that the State could have imposed on any criminal for any crime. (emphasis provided) Id. at 3013.
As the Court made clear, the distinction between a sentence with parole eligibility and one without is a very significant one. Contrary to what the majority opinion asserts, the sentence imposed on Foley is not one which is imposed in other jurisdictions (assuming the authorities cited in the majority opinion are complete).
Thus, after considering all these factors, the nature of the offense, the nature of the offender, the sentences imposed on other criminals in this jurisdiction, and the sentences imposed in other jurisdictions for the commission of the same crime, it is my view that the life sentence without parole eligibility imposed on this 15 year old mentally retarded youth for the particular rape he committed is constitutionally excessive under our own constitution and the United States Constitution. See Solem v. Helm.[6] *990 Accordingly, I dissent from the part of the majority opinion which held otherwise.

ON APPLICATION FOR REHEARING
WATSON, Justice, concurring in denial of rehearing.
The concurrence/dissent notes correctly that the weapon wielded by defendant was actually a letter opener. The record is somewhat confusing on this point. The victim repeatedly referred to being threatened with a knife and identified the sharp object, a letter opener, as "the knife he [Foley] had". (Tr. 129) The other rapist was armed with a steak knife. The victim regarded Foley's weapon as a knife and testified that Foley referred to it as "this knife". (Tr. 125) With this clarification, I respectfully concur in the denial of rehearing.
NOTES
[1] The grand jury also indicted Eduardo Robinson for this crime but defendant's motion to sever was granted and separate trials were held. Robinson's aggravated rape conviction and life sentence were affirmed by this court. State v. Robinson, 437 So.2d 872 (La.1983).
[2] At the time of the crime, LSA-R.S. 14:42 provided:

"Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
"(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
"(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
"(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
"Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[3] Assignment of Error Number Two was specifically abandoned on appeal. Assignment of Error Number Three, being neither argued nor briefed, is considered abandoned. State v. Campuzano, 404 So.2d 1217 (La.1981); State v. Parish, 405 So.2d 1080 (La.1981). There are no errors patent on the face of the record, therefore, Assignment of Error Number Five is without merit.
[4] The record of the early stages in this case, although made "part of this record" are not in the record as lodged in this court.
[5] State v. Foley, 383 So.2d 28 (La.1980).
[6] Defendant was named Helm, and the case is referred to here by his name rather than by that of Solem, the warden.
[7] LSA-R.S. 14:42.1 provides:

"Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
"Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than two nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence."
[8] In State v. Ross, 343 So.2d 722 (La.1977) a sixteen year old defendant was sentenced to death following his aggravated rape conviction. His conviction was upheld but his case remanded for resentencing because of the unconstitutionality of the death penalty. See also State v. Hills, 354 So.2d 186 (La.1978), after remand 377 So.2d 1218 (La.1979) which upheld a life sentence for a sixteen year old aggravated rapist and State v. Rogers, 275 N.C. 411, 168 S.E.2d 345 (N.C.1969) which upheld a life sentence of a defendant who was fourteen years, eleven months at the time the rape was committed.
[9] LSA-R.S. 15:529.1 provides in pertinent part:

"A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
* * * * * *
"(2) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then,
* * * * * *
"(b) If the third felony and each of the two prior felonies involved a violation of R.S. 14:34, R.S. 14:62.1, R.S. 14:65, R.S. 14:110(B), or of any crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
"(3) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then,
* * * * * *
"(b) The fourth or subsequent felony and two of the prior felonies involved a violation of R.S. 14:34, R.S. 14:62.1, R.S. 14:65, R.S. 14:110(B), or of any crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence."
[10] LSA-C.Cr.P. art. 814 provides in pertinent part:

"A. The only responsive verdict which may be rendered when the indictment charges the following offenses are:
* * * * * *
"8. Aggravated Rape: Guilty.
Guilty of attempted aggravated rape.
Guilty of forcible rape.
Guilty of attempted forcible rape.
Guilty of sexual battery.
Not guilty."
[11] Apparently, the without benefit feature is almost unique to Louisiana.
[1] La. Const. art. V § 19 was amended in 1979, but that amendment was not effective until November 30, 1979, three months after the instant offense was committed.
[2] Foley was not involved in the Schwartz murder.
[3] In an "amended supplemental brief" defendant deletes all reference to the words "prosecutorial vindictiveness."
[4] In 1979, as pertains to the facts of this case, aggravated rape, as defined in La.R.S., 14:42 provided:

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution:
La.R.S. 14:42.1, defining forcible rape, provided:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
[5] For a description of other forcible rape cases in which the perpetrators were sentenced to varying prison terms significantly less than the maximum for forcible rape (forty years), see State v. Lathers, 444 So.2d 96 (La.1983).
[6] I am not unmindful of the fact that the statutory penalty for aggravated rape is mandatory, and the trial judge, by statute, is afforded no discretion in sentencing the defendant. However, that does not absolve this Court (or any appellate court) of its duty to enforce an individual's constitutional right against excessive punishment on appellate review of his sentence. As noted in Helm, "[w]e raise no question as to the general validity of sentences without possibility of parole. The only issue before us is whether, in the circumstances of this case and in light of the constitutional principle of proportionality, the sentence imposed on this petitioner violates the Eighth Amendment." (emphasis provided)