| WHIPPLE, Judge.
Defendant, Edmond D. Spencer, was charged by grand jury indictment with first degree murder, a violation of LSA-R.S. 14:30. He pled not guilty. After a trial, the judge declared a mistrial based *456 upon the jury’s inability to render a verdict. Subsequently, the state amended the indictment and charged defendant with second degree murder, a violation of LSA-R.S. 14:30.1. Defendant was arraigned on this charge and pled not guilty. After a trial, the jury found defendant guilty as charged. Defendant filed motions for new trial and post-verdict judgment of acquittal, which were denied. Defendant waived sentencing delays and the trial court sentenced him to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Immediately thereafter, defense counsel made an oral and written motion to reconsider sentence. The trial court denied this motion. Defendant now appeals.
FACTS
On the night of February 28, 1996, firemen responded to a fire at the trailer home of Gary Verbois in Bogalusa, Louisiana. After the fire was extinguished, firemen examined the premises to determine the origin of the fire, which did not completely destroy the trailer. In a bedroom, they found the body of Gary Verbois, the victim. It was apparent to fire officials and sheriff deputies that the victim had received blows to his head and had approximately 40 stab wounds in his body. They determined that the victim, whose body contained only a few burns, did not die as a result of the fire and that someone had deliberately set the fire to hide the murder. Sheriff deputies who investigated the murder also found that the victim’s new automobile was gone.
From their investigation, the officers determined that earlier that evening, defendant had a fight with his girlfriend, left their home and received a ride |3from his sister, Renee, to a local bar called Skin Flints. There, defendant called the victim, a friend with whom he had worked at the local newspaper, and asked the victim to pick him up from the bar. The two men went to another man’s house and stayed there for a while. They left and went to the victim’s trailer where defendant killed the victim by hitting his skull with a hammer. Defendant also used a knife to stab the victim about 40 times. Defendant pilfered 'through the victim’s bedroom furniture and took the victim’s car keys and wallet. Before he left in the victim’s vehicle, defendant started a fire in the trailer. After he left, defendant drove the victim’s vehicle into a ditch.
Subsequently, defendant went to the home of Teresa Stansbury, a friend, who unsuccessfully tried to help him remove the victim’s vehicle from the ditch. While at the location of the victim’s vehicle, a truck carrying four people stopped and offered to help drag the car out of the ditch. When they could not remove the vehicle, these people drove defendant to Stansbury’s home. Stansbury then drove defendant to a lounge called the Pub. On the way there, defendant began throwing things, including a wallet, hammer, blue washcloth and towel, out of the vehicle’s window. At the Pub, defendant called Melissa, another sister, to pick him up. Melissa drove him to her home, where their sister Renee tried to talk to defendant about what was bothering him. Defendant and Renee drove to the location of the victim’s vehicle; Renee attempted to wipe the vehicle clean of defendant’s fingerprints and attempted to set the vehicle on fire to destroy any evidence inside. When they left that location, Renee dropped defendant off at his residence. Defendant changed his clothes and boots and washed them in the washing machine.
Meanwhile, sheriff deputies located the victim’s vehicle, in a ditch on a road south of Bogalusa. During their search of the *457 roadway, the officers also found and seized the knife, hammer, towels containing blood spots and the [4victim’s wallet, discarded by defendant. During this time, the officers also received information from an informant, whose name was not- released, naming defendant as a suspect. When the officers learned that defendant was at the residence he shared with his girlfriend, they went to that location and arrested him in his trailer. Defendant, his .girlfriend, and his sisters, Melissa and Renee, were asked to go to the police station for questioning. His girlfriend and sister, Renee, gave statements indicating that defendant told them that the victim’s murder was committed in his presence by members of the “Arien (sic) Brotherhood.” In response to police questioning, defendant made an oral statement admitting that his statements to his sister and girlfriend about the “Arien (sic) Brotherhood” were lies; he told police that the killing was the result of a “drug deal that went bad.”
In his sole assignment of error, defendant argues that the trial court erred in not applying the principles of State v. Dorthey, 623 So.2d 1276 (La.1993), in not considering the aggravating and mitigating factors, and in not imposing the longest sentence that is not constitutionally excessive. Defendant also argues that State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, erroneously establishes a presumption that the mandatory minimum sentence is constitutional and erroneously holds that the burden is on defendant to rebut this presumption and to prove that the sentence is excessive. He argues instead that “the principles stated in Dorthey and Johnson should apply to the mandatory sentencing provided in [LSA-]R.S. 14:30.1 for second degree murder” and that the sentencing judge must justify the sentence by finding special circumstances that render the mandatory sentence constitutional.
The state counters that although the sentencing judge' did not refer to the sentencing factors, the facts - of the murder and the case, including the commission of acts constituting aggravated arson, aggravated burglary and | sarmed robbery, support the imposition of the mandatory life sentence without benefit of parole, probation or suspension of sentence. The state further argues that defendant’s propensity for criminal activity (violent acts against an inmate and a deputy while defendant was. incarcerated in the Washington Parish Jail) supports the imposition of a life sentence.
First, we note that defendant does not argue any circumstances surrounding the crime or related to him that render the life sentence excessive. ' He merely argues that in order for the life sentence to be constitutional, it must be based upon the trial court’s consideration of the circumstances of the instant case (including the seriousness of the offense or violence in the offense), the background of the defendant (his age, family ties, marital status, health, employment record, any problems such as mental illness, drug addiction or retardation), the likelihood of rehabilitation, the defendant’s prior criminal history, the proportionality of the sentence to the seriousness of the offense, and whether there is any societal purpose and need to the infliction of pain and suffering of this defendant and, if so, how much.
In State v. Dorthey, 623 So.2d at 1280-1281, quoting State v. Lobato, 603 So.2d 739, 751 (La.1992), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounts to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the *458 severity of the crime,” he is duty-bound to reduce the sentence to one that would not be constitutionally excessive.
However, the holding in Dorthey was made only after, and in light of, express recognition by the court that “the determination and definition of acts which are punishable as crimes is purely a legislative function. It is the | fiLegislature’s prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional.” State v. Dorthey, 623 So.2d at 1278 (citations omitted). In State v. Johnson, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure from a mandatory minimum sentence, albeit in the context of the Habitual Offender Law. The Court held that to rebut the presumption that the mandatory minimum sentence was constitutional, (as the defendant was required to do to overcome the presumption of constitutionality) the defendant had to “clearly and convincingly” show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Johnson, 97-1906 at p. 8, 709 So.2d at 676.
While both Dorthey and Johnson involve the mandatory minimum sentences imposed under the Habitual Offender Law, the Louisiana Supreme Court has held that the sentencing review principles espoused in Dorthey are not restricted in application to the penalties provided by LSA-R.S. 15:529.1. See State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274, 1275 (per curiam); State v. Henderson, 99-1945, p. 19 n. 5 (La.App. 1st Cir.6/23/00), 762 So.2d 747, 760 n. 5; State v. Davis, 94-2332, p. 12 (La.App. 1st Cir.12/15/95), 666 So.2d 400, 408, writ denied, 96-0127 (La.4/19/96), 671 So.2d 925.
The Court in State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, indicated that the factors outlined in State v. Telsee, 425 So.2d 1251, 1253-1254 (La.1983), are useful in determining whether or not a sentence, by its excessive length or severity, is grossly out of proportion to the underlying crime. These factors include the nature of the offense and the offender, a [7comparison of the punishment with sentences imposed for similar crimes, the legislative purpose behind the punishment, and a comparison of the punishment provided for this crime in other jurisdictions. See Baxley, 94-2982 at p. 10, 656 So.2d at 980. These last two factors (legislative purpose behind the punishment and a comparison of the defendant’s punishment with how he would have been punished in other jurisdictions) are more useful when a defendant claims that the nature of punishment or the range of sentences authorized by the statute are unconstitutionally excessive. Telsee, 425 So.2d at 1254.
In State v. Foley, 456 So.2d 979, 981-982 (La.1984), the Louisiana Supreme Court considered the above factors before holding that imposition of a mandatory life sentence for aggravated rape did not violate the Louisiana Constitution. See also State v. Prestridge, 399 So.2d 564, 582 (La.1981); State v. Kennedy, 569 So.2d 242, 246 (La.App. 1st Cir.1990), writ denied, 575 So.2d 387 (La.1991); State v. McDaniel, 515 So.2d 572, 577-578 (La. App. 1st Cir.1987), writ denied, 533 So.2d 10 (La.1988).
In the instant case, the court did not state the factors which would justify the mandatory life sentence; nor did it order a presentence investigation report. The tri *459 al transcript, however, reflects the facts of the offense. Elsewhere in the record, there is information about defendant’s criminal history and defendant’s violent offense against another inmate. The bill of information contains defendant’s birth date, and indicates that at the time of sentencing, defendant was twenty-nine years old. The state’s notice of intent to introduce evidence of prior felony convictions and defendant’s motion in limine indicate that defendant pled guilty to theft over $500.00 in 1989 and that he pled guilty to simple burglary and pled nolo contendere to unauthorized entry of an inhabited dwelling in 1991. Additionally, the state’s notice of intent to introduce evidence [sof defendant’s juvenile delinquent adjudication reflects defendant’s guilty plea in 1987 to simple burglary. The state also alleged in its notice of intent to introduce unadjudicated criminal conduct, that prior to trial, while he was an inmate at the parish jail, the defendant committed aggravated assault on a deputy and second degree battery on an inmate.
Although the record does not contain the autopsy report or a transcript of the testimony of the coroner,[1] it is apparent from the evidence that the victim’s death was caused by the infliction of multiple, severe blows to his head from a hammer and the infliction of approximately forty stab wounds using the butcher knife introduced into evidence. Additionally, in an attempt to hide his criminal acts, defendant set fire to the victim’s trailer, potentially endangering others in the trailer park.
Thus, from the record it is apparent that the instant offense involved profoundly violent acts resulting in the victim’s death and that defendant also committed other criminal acts that endangered others. Although defendant was only in his late twenties at the time of his trial, he already had numerous convictions as a juvenile and adult. It was apparent that defendant’s criminal acts had escalated and, as evidenced by his actions in jail, he continued to be a danger to others.
Thus, the defendant failed to clearly and convincingly show that because of any unusual circumstances he was a victim of the legislature’s failure to assign sentences meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. As the sentencing judge apparently (and correctly) concluded, there were no circumstances | ¡justifying a deviation from the mandatory sentence provided for the instant offense by LSA-R.S. 14:30.1(B). See State v. Henderson, 99-1945 at pp. 19-20, 762 So.2d at 761.
Accordingly, this assignment of error lacks merit.
CONVICTION AND SENTENCE AFFIRMED.

. The record indicates that a transcript of Dr. William Newman's testimony (apparently the testimony of the coroner at the first trial) was read during the second trial. However, the court reporter did not transcribe this portion of the proceedings.