PRESTON H. HUFFT, Judge Pro Tern.
The defendant, Jerome Smith, was indicted for the first degree murder of William Long. After a three day trial, the jury found him guilty as charged and recommended that he be sentenced to life imprisonment. Upon the denial of his motion for a new trial and the waiver of all delays, he was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. He now appeals his conviction.
Thomas Weil testified that at approximately 4:00 P.M., on October 29, 1985, he was driving on Jena Street toward the lake. As he approached the comer of Freret Street, he observed two men struggling in the middle of Jena Street. He stopped his vehicle 10 to 15 yards from the struggle. A shot rang out and one man fell to the ground as the other man turned and fled through a nearby schoolyard in the direction of Napoleon Avenue. Weil then backed his car a short distance toward La-Salle Street away from the scene and saw the man in the street, William Long, get up, stagger to the sidewalk, and collapse. Weil parked his car and went to Long’s assistance. Long later died at the hospital. The cause of death was attributed to a gunshot wound to the left front chest which perforated his kidney and a major blood vessel. The pathologist from the coroner’s office estimated the shot was fired from a gun positioned one to two feet from Long’s body.
Not long after Weil was at Long’s side trying to prevent the victim from going into shock, two police officers arrived at the scene. One of the officers called for an EMS unit. Sometime after the officer called for the EMS unit, Weil recalled looking at his watch wondering how long it was taking the EMS unit to arrive — the time was 4:07 P.M.
Weil gave the following description of the assailant to Officer Dabdoub one of the first officers to arrive on the scene — a young, black male around 16 or 17, dark, thin build and wearing dark colored, baggy trousers, a white V-neck T-shirt with a scarf around his neck. He denied that he told the officer the assailant was short.
Weil testified that he had a pretty good view of the struggle, the faces of the participants, and that the assailant had a .22 or .25 caliber automatic in his right hand and something (which Weil could not identify) in his left hand as he fled the scene.
At the trial, Weil described Long as somewhere around 55 years of age, pale skin, thinning hair, heavy set, around 5’9” or 5’10” and the assailant as taller than Long, thin, young and with a dark complexion.
On the day after the shooting, Detective Saladino conducted a photographic lineup at Weil’s residence. Weil selected the defendant’s photograph from the eight photographs in the lineup. There was no evidence of any suggestiveness or irregularity *1187 in the manner in which the identification process was conducted. At the trial, Weil positively identified the defendant as the man he saw struggling with Long on Jena Street and fleeing through the schoolyard.
Mioski and Deseree Thompson, sisters who lived two blocks farther up Jena Street from Freret Street, testified they left their house between 3:50 and 3:55 P.M. After warming the engine, they proceeded in their ear on Jena Street toward Freret Street. When they reached Freret Street, they witnessed two men struggling in the middle of Jena Street on the river side of Freret Street. They also saw one man fall to the ground and the other man flee through a schoolyard toward Napoleon Avenue. The sisters turned onto Freret Street and then onto Napoleon Avenue and saw the same man who fled from the struggle on Jena Street emerge from the schoolyard onto Napoleon Avenue. They testified that this same man pushed a boy off a bicycle, took the bicycle, turned at the comer and fled on LaSalle Street back to Jena Street. As in the case with Weil, Detective Saladino conducted a photographic lineup with Mioski at her residence and Deseree at the police station. In each instance, Mioski and Deseree selected the defendant’s photograph from the eight photographs in the lineup. There was no evidence of any suggestiveness or irregularity in the manner in which the identification process was conducted. At the trial Mioski and Deseree each positively identified the defendant as the man they saw struggling on Jena Street, fleeing through the courtyard, emerging on Napoleon Avenue, taking a bicycle from a boy and fleeing on LaSalle Street back to Jena Street.
As a result of the independent photograph lineup identifications by Thomas Weil, Misoski Thompson and Deseree Thompson, Jerome Smith was arrested at his home at 2206 Jena Street, which is two blocks from the scene of the shooting.
Mrs. Joyce Long, the victim’s wife, testified that she was inside the family bakery located at the comer of Jena and Freret Streets when she heard the shot. She testified that Long as he lay on the sidewalk told her that he had been robbed.
Honroe Haydel and Ernest Keller, who worked at Busty and Buddy’s Better Service Station located at the comer of Washington Avenue and South Galvez Street, both testified that they saw the defendant and his mother at the service station on the afternoon of the shooting. Neither man could pinpoint exactly when the Smiths were there. Haydel admitted that when he was first questioned in the District Attorney’s Office he couldn’t be sure as to what time the Smiths were at the service station on October 29, 1985. At the trial, he testified that he had reflected on the matter and was more than sure that the Smiths were there approximately around 4:00 P.M. but he admitted that it could have been as late as 4:10 or 4:15 P.M. Keller could only estimate that the Smiths were at the station sometime after 3:00 P.M.
Denise Deal, Valerie Branch and Sonya Duncan, employees of the Youth Study Center located at 1100 Milton Street, testified that they saw the defendant and his mother at the center on the afternoon of October 29, 1985. Ms. Deal testified that Ms. Smith and the defendant arrived at the center at 4:15 P.M. and she immediately called Ms. Branch to announce the Smiths’ arrival. Shortly after that call, Ms. Deal said she sent Ms. Smith to Ms. Branch’s office. Ms. Branch testified that she received the call from Ms. Deal announcing the arrival of the Smiths between 4:15 and 4:30 P.M. Although, Ms. Branch could not recall the exact time of the phone call from Ms. Deal, she testified that it probably was a little closer to 4:30 P.M. because she remembered looking at her watch and thinking to herself that the Smith’s had at least 30 minutes to wait for their 5:00 P.M. appointment with Ms. Thomas, a part time staff consultant. Ms. Branch stated that she then went to the reception area and escorted Ms. Smith to her office. Ms. Duncan testified that she checked in at the receptionist desk at 4:29 P.M. to relieve Ms. Deal. Ms. Duncan stated that when she reported in at 4:29 P.M., Ms. Smith and the defendant were still seated in the reception area and that it wasn’t until between 5 and *1188 10 minutes after her arrival for work that Ms. Smith left the reception area to go see Ms. Branch.
Horace Batiste, a consultant called by the defendant, testified that he mapped and drove the route from 2206 Jena Street to the Busty and Buddy’s Better Service Station to the Youth Study Center. He drove the route 3 times — in 15 minutes, 18 minutes, and 21 minutes.
Agnes Haynes, who lived in the 2500 block of Jena Street, testified that at approximately 3:45 P.M. on the afternoon of the shooting she was standing outside her house and saw a young neighbor walk past her on Jena Street and stand on the corner by Bill Long’s Bakery. She testified that the young neighbor was wearing a white T-shirt, jeans and was short with a low haircut. She further testified that she then went inside her home and did not reappear until after she heard a shot approximately ten minutes later.
I.
By his first assignment of error, the defendant contends that there was insufficient evidence to support his conviction for first degree murder. In its review of a conviction for sufficiency of evidence, the court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Andrews, 452 So.2d 687 (La.1984).
The defendant was convicted of first degree murder in violation of R.S. 14:30, subd. A(l) which includes the killing of a human being when the offender has specific intent to kill or inflict great bodily harm and is engaged in the perpetration of armed robbery. Three eyewitnesses to the shooting identified the defendant as the person who struggled with and shot the victim and then was seen fleeing the scene. The victim’s wife testified that immediately after the shooting, the victim told her that he had been robbed. The cause of death was a close-range gunshot wound to the chest. Thus, the elements of first degree murder appear to have been proven.
The defendant contends, however, that the identification of him by the three eyewitnesses was faulty. The jury heard in detail the eyewitnesses observation of the incidents which led to Long’s death, the independent indentification by each of the three eyewitnesses of the defendant in the photographic lineups conducted by Detective Saladino and the positive, in court, identification of the defendant by each of the three eyewitnesses as the man they saw struggling with Mr. Long on Jena Street on the afternoon of October 29,1985 and fleeing through the schoolyard. Viewing the evidence in the light most favorable to the prosecution, the jury could have found the eyewitnesses identification credible beyond a reasonable doubt. Additionally, the defendant contends that the eyewitnesses identifications were suspect because the defense witnesses were able to account for the defendant’s whereabouts of the time of the shooting. Considering the testimony of the service station attendants, the employees of the Youth Study Center, and the consultant who timed the trip from the defendant’s home to the service station to the Youth Study Center, the jury could have concluded that the evidence presented did not preclude the defendant’s presence at the scene of the crime. Finally, the defendant on the basis of Ms. Hayes’ testimony argues that Ms. Hayes’ neighbor could have committed the crime. There is nothing in Ms. Hayes’ testimony that ties her neighbor to the scene at the time of the shooting.
Thus, viewing the evidence in the light most favorable to the prosecution, the jury could well have found the defendant guilty beyond a reasonable doubt. State v. Davis, 471 So.2d 310 (La.App. 4th Cir.1985).
This assignment is without merit.
II.
By his second assignment of error, the defendant contends that the trial court erred by refusing to grant a mistrial be *1189 cause a witness alluded to other crimes allegedly committed by the defendant. During her testimony, Mrs. Joyce Long, the victim’s widow, stated:
My husband was a good man. He never hurt anybody in all his life. We were a happy family until he killed him. And he’s the same one that tried to get me that Friday or Saturday.
No objection was made to these statements at that time. The prosecutor asked Mrs. Long two more questions and then rested, and the defense asked no questions. The court then took a recess, and it was only after the recess that the defense asked for a mistrial, which was denied.
C.Cr.P. art. 770(2) mandates the granting of a mistrial if a judge, district attorney, or a court official refers within the hearing of the jury to “[ajnother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.” However, because this witness does not fall within any of these catagories, one must look to art. 771(2), which provides that upon request of the defense, the trial court must admonish the jury:
When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In State v. Payne, 482 So.2d 178 (La.App. 4th Cir.1986), writ den. 487 So.2d 436 (1986) this court noted that the trial court may order a mistrial if it feels that an admonition is not sufficient. However, “mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to a defendant which effectively deprives him of a fair trial.” Payne, supra, Page 181.
In Payne, the witness’ remarks as to the defendant’s other crimes were solicited by the prosecutor. Here, Mrs. Long’s statement was nonresponsive to the prosecutor’s question. Because it does not appear that the appellant was so prejudiced by the remark as to warrant a mistrial, and because the defense specifically requested that an admonition not be given, the trial court did not err by not doing either.
This assignment is without merit.
III.
By his last assignment of error, the defendant contends the trial court erred when it sustained the State’s objection, on the basis of hearsay, to the defense question addressed to Ms. Rebecca Weber as to what description did she hear Weil give the police officer at the scene. Defense counsel did not object to the trial court’s ruling nor was error assigned at the time. Defendant contends that if Mrs. Weber had been allowed to testify she would have testified that she heard Weil describe the assailant as being short. The Lousisiana Supreme Court was faced with an identical situation in State v. Klein, 351 So.2d 1158 (La.1977). In Klein, defense counsel addressed a question to the defendant’s mother as to what the victim said to her within ten to fifteen minutes of the alleged robbery. The State objected on the basis of hearsay and the trial court sustained the objection. The defense attorney did not object to the trial court’s ruling. In his brief on appeal, defense counsel contended that the information sought to be elicited from the defendant’s mother was part of the res gestae and the trial court was in error in sustaining the State’s objection. The Supreme Court disposed of this contention as being without merit in the following language:
“This assignment of error is not well taken. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurence. The party aggrieved should at the time the ruling is made, make known to the court his objections and the grounds therefor. La.Code Crim.Proc. art. 841.” Klein, supra, Page 1160.
See also State v. Johnson, 438 So.2d 1221 (La.App. 3rd Cir.1983).
This assignment is without merit.
We have reviewed the record for errors patent and have found none.
*1190 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.