ARMSTRONG, Judge.
On May 15, 1986 the relator was found guilty of first degree murder. On May 30, 1986 he was sentenced to serve life imprisonment without the benefit of probation, parole or suspension of sentence. This Court affirmed the conviction and sentence on appeal. State v. Smith, 511 So.2d 1185 (La.App. 4th Cir.1987); writ denied, 519 So.2d 114 (La.1988).
On August 7, 1992 the relator filed an application for post conviction relief with the trial court. The trial court denied the application on September 2, 1992. The relator filed a supplemental memorandum in support of his application with the trial court on September 21, 1992, and the trial court denied that on October 13, 1992. The relator now requests a review of the denials by the trial court.
The relator raised three claims in his application for 'post conviction relief, but makes only one argument encompassing all of the claims. The following are the relator’s claims:
*1077 1) Whether a Brady violation occurred when the police concealed evidence depicting the “actual” description of the perpetrator effectively foreclosing any opportunity for meaningful cross-examination during trial.
2) Whether a Brady violation occurred where the State failed to produce favorable evidence contained in a statement, obtained by police from Ledora Nicholes, an employee of Long’s bakery, impinging on the opportunity to prepare/present a relevant defense to first-degree murder in violation of fundamental due process of law.
3) Whether petitioner’s conviction was the result of a conspiracy by prosecuting authorities, notable, certain members of the New Orleans police Department, and from the office of the District Attorney.
These claims arise because the relator made a formal request to the police department in 1991 for page number three of the initial police report. The police department responded that when the report was transferred to microfilm, page number three was inadvertently omitted, and the original paper report was destroyed. Thus, the police department was unable to provide him with page number three of the report. The relator now claims that the defense was not given a copy of page number three prior to trial. The relator goes even farther and suggests that page number three was intentionally withheld by the police department because it contains the original description of the perpetrator of the crime. The relator’s leap is illogical.
The relator uses two reasons to explain his allegation that the page was withheld by the police. The first is that the assistant district attorney, in his answer to the motion for discovery, stated that there was no Brady material; the second is that on page two of the supplemental police report, it is stated that the homicide division of N.O.P.D. refused to submit a copy of the homicide report to the juvenile division because of the nature of the charges (as is standard procedure for N.O.P.D.). The relator concludes, then, that there was a conspiracy to keep page three of the incident report from the hands of the defense before trial.
Neither of these reasons supports the notion that page three of the police report was withheld from the defense, or that it was withheld because of a conspiracy. In fact, the relator proves only that when the paper copy of the police report was copied onto microfilm, page three was not copied. The relator’s claim that evidence was withheld has not been supported and should be denied.
The relator further claims that the information contained on page three of the report constitutes Brady material, and since it was not given to the defense before trial, the relator’s conviction should be reversed. The relator has obtained a copy of page three of the incident report, and alleges that it shows that he was initially described as short. The description written on page three states that the perpetrator’s height was given as 5'7". The relator claims to be a little over six feet tall.
The relator’s claim is without merit. The height of the relator, as well as the notion that the perpetrator was originally described as “short” was apparently addressed at trial. Even in this Court’s appeal opinion, the facts state that one of the State’s witnesses “denied that he told the Officer that the assailant was short.” This statement, alone, shows that the defense was proceeding with the knowledge that someone informed the police that the assailant was short. Since the relator has not shown that any statement by any witness was withheld, or that page three was withheld from the defense, these claims are without merit and should be denied.
In his supplemental memorandum, the relator again returns to page three of the initial report. The relator claims that since page three was never made available to the defense and since it states that the perpetrator had a light colored bandanna on his face, then the three eyewitnesses testimony at trial could have been impeached. This claim is also without merit.
First, the relator has not shown that page three was withheld. Second, the rela *1078 tor has not shown how the witnesses testimony would have been impeached considering the fact that the three witnesses to the armed robbery and shooting each picked out the relator in separate photographic line-ups, and identified the relator in court at trial. The relator has not supported his allegation, and therefore, this claim should be denied.
Accordingly, we find no error in the ruling of the trial court which denies the relator’s claims.
AFFIRMED.