# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2021

Lyle W. Cayce
Clerk

No. 19-30261

Jerome Skee Smith,

*Petitioner—Appellant*,

*versus*

Darrel Vannoy, Warden, Louisiana State Penitentiary,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-3923

Before Haynes, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:*

Jerome Skee Smith was convicted of first-degree murder in 1986. He was sentenced to life in prison. In this successive § 2254 application, he challenges his conviction under *Brady v. Maryland*, 373 U.S. 83 (1963). But we are unable to reach the merits of his *Brady* claim because his petition was

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

untimely.   Accordingly, we AFFIRM the district court's dismissal of the successive petition.

## I.

William Long was shot and killed in the middle of the street outside his uptown New Orleans bakery on October 29, 1985.  Three eyewitnesses—Thomas Weil and sisters Mioshi and Deseree Thompson—identified the perpetrator from a photographic lineup as Jerome Skee Smith, a teenager who lived two blocks from the crime scene.[1] *See State v. Smith*, 511 So. 2d 1185, 1186–87 (La. Ct. App. 1987).

The prosecution relied entirely on the testimony of these three eyewitnesses, each of whom placed the shooting around 4:00 in the afternoon.  But Smith proffered an alibi.  Two employees of a service station not far from the bakery testified at trial that Smith and his mother had been there sometime around 4:00 that afternoon, though they could not say exactly when, to purchase gas and have a quick maintenance check—in all, for as long as ten minutes.  *Id.* at 1187.  And Smith had a 5:00 appointment at the Youth Study Center, which was between a 15- and 21-minute drive from the service station.  *Id.* at 1187–88.  But three employees of the Youth Study Center testified that they saw him there no later than 4:30 and probably before.  *Id.*  In short, Smith's alibi narrowly confined the window in which he could have been present at the crime scene and likewise rendered the precise time when the shooting occurred a matter of critical significance.

Nevertheless, the jury credited the eyewitnesses' testimony and convicted Smith of first-degree murder.  He was sentenced to life in prison without benefit of parole, probation, or suspension of sentence.  *Id.* at 1186.

---

[1] Mioshi Thompson's first name appears throughout the record as "Mioshi," "Mioski," "Myoshi," and "Mickey."

No. 19-30261

Thereafter, the state intermediate appellate court affirmed, and the Louisiana Supreme Court denied his application for a writ of certiorari. *Id.* at 1190; *State v. Smith*, 519 So. 2d 114 (La. 1988). Three rounds of unsuccessful state post-conviction proceedings and an initial § 2254 petition followed.

In 1997, after his first round of state proceedings, Smith filed a § 2254 petition, reiterating the claims he had previously raised in the state application. The district court denied that petition and this court subsequently denied his request for a certificate of appealability. In 1998, he filed a second state habeas petition, raising new claims alleging ineffective assistance of counsel and violations of equal protection. The Louisiana Supreme Court denied his writ request on March 14, 2003. *State v. Smith*, 839 So.2d 29 (La. 2003).

Smith filed a third and final state habeas petition on February 20, 2004. The Louisiana Supreme Court ultimately denied relief as to the third petition on June 24, 2005. Then, on December 18, 2008, he filed "a supplemental and amended memorandum" in support of the 2004 application. The 2008 filing raised claims that the state's witnesses had testified falsely at trial and that prosecutors had withheld additional favorable and material evidence in the form of police reports, transcribed witness statements, and an affidavit in support of an arrest warrant. After conducting hearings, the state trial court denied the application in 2011. The intermediate appellate court denied the ensuing writ application, as did the Louisiana Supreme Court on May 18, 2012.

In January 2013, Smith filed a motion for authorization to file a successive § 2254 application raising *Brady* claims. Smith's motion identified evidence turned over by the state after his first § 2254 application had been denied, evidence that the defense had not previously seen. The

3

withheld evidence consisted of (1) statements by Thomas Weil and Mioshi Thompson recorded on the day after the shooting that differed from their trial testimony; (2) an incident report, application for an arrest warrant, and police memos, all of which pertained to the time of the shooting; and (3) a 14-photograph lineup—which Smith averred contained two photos of him—that was evidently shown to the witnesses, rather than the eight-picture lineup that was introduced at trial.  This court granted Smith's motion on March 11, 2013.

Proceeding *pro se*, Smith filed the instant § 2254 application on May 22, 2013.  The state asserted that the application was untimely.  Addressing that contention, the magistrate judge did not attempt to conclusively determine when the one-year federal limitations period began.  Instead, he identified only the *latest* possible point it could have begun—May 18, 2012, the date the Louisiana Supreme Court denied the final state habeas application—to determine that the latest it could have expired was May 20, 2013.[2]  Accordingly, the magistrate judge concluded that Smith's application was late by two days, and, finding no statutory or equitable basis for tolling, recommended dismissing the application as time barred.  Smith objected. The district judge stressed that Smith had been placed on lockdown shortly after receiving authorization to file his successive petition, preventing access to his legal materials from May 7, 2013 until the deadline of May 20, 2013. Thus, the district judge determined that Smith was entitled to equitable tolling for the two-day delay, declined to dismiss the application as untimely, and appointed counsel to address the merits of his claims.

But the district court ultimately denied relief, concluding, reluctantly,

---

[2] Under this calculation, the one-year period would ordinarily have expired on May 18, 2013, but because that date fell on a Saturday, the deadline was extended through the following Monday.

No. 19-30261

that Smith had failed to satisfy the stringent requirements of 28 U.S.C. § 2244(b)(2) for review of successive petitions. Nevertheless, the district court granted Smith a certificate of appealability as to whether it erred in dismissing the application, and he timely appealed.

## II.

We review a decision to grant equitable tolling for abuse of discretion. *Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir. 2002). "A district court abuses its discretion when it makes an error of law or if it bases its decision on a clearly erroneous assessment of the evidence." *United States v. Wilcox*, 631 F.3d 740, 747 (5th Cir. 2011) (internal quotations and citation omitted). A factual finding is not clearly erroneous if it is plausible when the record is considered as a whole. *United States v. Raney*, 633 F.3d 385, 389 (5th Cir. 2011).

## III.

We first consider the timeliness of Smith's petition. Because we conclude that he did not timely file his petition, we cannot reach the merits of his claims.

A successive § 2254 application is subject to a one-year limitation period. 28 U.S.C. § 2244(d)(1)(D). Under certain circumstances, statutory and equitable tolling may apply. The one-year period is statutorily tolled for the time that a properly filed application for state collateral relief is pending. 28 U.S.C. § 2244(d)(2). Because the one-year period is not to be construed as a jurisdictional bar, it may be equitably tolled, but only "in rare and exceptional circumstances."[3] *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.

---

[3] If unasserted, this limitations period may also be subject to waiver or forfeiture because it is not an "inflexible" jurisdictional rule. *See Holland v. Florida*, 560 U.S. 631,

No. 19-30261

1998).  The applicant bears the burden of showing that equitable tolling is warranted.  *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

The district court's analysis finding Smith's application timely is flawed in two significant respects.  First, it proceeded from an unconsidered and faulty premise about when the one-year period began to run.  The district court began its analysis with the assumption that the magistrate judge had already determined, without any objection from the state, that the period actually began to run on May 18, 2012.  That was not so.  Rather, the magistrate judge had expressly declined to reach a determination about when the period began to run because he reasoned that the petition was untimely in any event, whether measuring from the latest possible start date or any time before.  Had it attempted to identify the actual start date, the district court could not have escaped placing it well before 2012.  Second, even assuming *arguendo* that the clock did begin to run on May 18, 2012, the district court erred in finding that Smith's circumstances were sufficiently extraordinary to entitle him to equitable tolling.  We consider each of these points in turn.

The one-year period begins to run on the date when the underlying facts of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. §§ 2244(d)(1)(D).  The facts underlying Smith's claim consist of the evidentiary materials that were undisclosed to him, and he became aware of their existence in September 2001.[4]  Accordingly, the

---

645 (2010).  Yet here the state has asserted the timeliness issue, preventing our consideration of an untimely filing that does not warrant equitable tolling.

[4] Smith's counsel conceded at oral argument that Smith knew of the undisclosed evidence in September 2001.  Additionally, Smith averred in his motion for authorization to file a successive petition that he first discovered the pertinent materials in September 2001.  There is no reason to suspect that he could have discovered them before that time.

6

No. 19-30261

limitations period began to run then.  Much of the time that elapsed after that was statutorily tolled pursuant to § 2244(d)(2) due to the pendency of state habeas proceedings.  But little difficulty confronts us in accounting for the passage of more than one year during which no such proceedings were pending.  Over 11 months passed from when the Louisiana Supreme Court denied the writ request in his second state habeas petition on March 14, 2003 to when he filed his third application for state habeas relief on February 20, 2004.  Nearly eight more months elapsed between the time when the Louisiana Supreme Court denied his writ application in his third state habeas petition on May 18, 2012 and the time when he sought authorization to file a successive § 2254 application in this court.[5]  And approximately two more months passed from the time this court authorized his successive application on March 11, 2013 to when he filed his application on May 22, 2013.  Moreover, for none but a small sliver of this time has Smith suggested that he is entitled to equitable tolling.  In sum, we are unable to construct a

---

[5] Notably, the Louisiana Supreme Court initially denied Smith's 2004 application on June 24, 2005.  Our timeliness analysis assumes *arguendo* that the "supplemental and amended memorandum" Smith filed in 2008—which the Louisiana Supreme Court denied on May 18, 2012—did not constitute a new, fourth state habeas petition but instead related back to his 2004 petition and continued to toll the limitations period from June 24, 2005 all the way to May 18, 2012.  It is not at all clear that Smith warrants such a liberal assumption.  But either way, his successive petition is untimely.

We also note that state proceedings do not toll the one-year period if filed after it has already run.  *See e.g.*, *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013).  Thus, absent our assumption that it related back to the 2004 petition, Smith's 2008 filing would be irrelevant for tolling purposes because the limitations period would have already run anyway.

Nor would Smith's petition for authorization to file a successive § 2254 petition have tolled the limitations period because a federal motion is not a state application for post-conviction relief that triggers tolling under § 2244(d)(2).  *Duncan v. Walker*, 533 U.S. 167, 172 (2001) (holding that a federal filing is not an application for state post-conviction or other collateral review within the meaning of § 2244(d)(2)).

timeline in which his application could be considered timely.

Furthermore, even assuming *arguendo* that the district court did correctly identify the starting point of the limitations period, the successive petition was only rendered timely by its application of equitable tolling. But we are unpersuaded that Smith is entitled to equitable tolling.

To show that his situation is among those rare and exceptional circumstances in which equitable tolling is warranted, Smith must show (1) that he pursued his rights diligently and (2) that some extraordinary circumstance stood in his way. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Moreover, he must demonstrate a causal relationship between the extraordinary circumstance and his delay, a showing "that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *United States v. Perkins*, 481 F. App'x 114, 118 (5th Cir. 2012) (internal quotations and citations omitted). Smith does not meet these requirements.

First, tolling is not automatic upon a showing of extraordinary circumstances, and Smith failed to show that he "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "We have recognized that a component of the obligation to pursue rights diligently is not to wait until near a deadline to make a filing, then seek equitable tolling when something goes awry." *Schmitt v. Zeller*, 354 F. App'x 950, 951–52 (5th Cir. 2009) (citing *Johnson v. Quarterman*, 483 F.3d 278, 287–88 (5th Cir. 2007)). Smith does not satisfy that component obligation.

In other cases, we have held that prisoners who were aware that their state post-conviction proceedings were no longer pending and yet waited to file federal habeas petitions between four and six months after the limitation period began did not exercise reasonable diligence. *See Palacios v. Stephens*,

723 F.3d 600, 606 (5th Cir. 2013) (collecting cases). There are no bright-line rules in this context, *see id.*, but this case is analogous to those. Smith's time in lockdown and without access to his legal materials comprises a very small portion of the time he was permitted to pursue his rights. He waited nearly eight months after his last round of state collateral review to seek authorization to file a successive habeas petition and, even after obtaining authorization, another two months passed before he lost access to his legal materials. Thus, the district court erred in concluding that Smith pursued his rights diligently.

Second, circumstances cannot be considered extraordinary for purposes of equitable tolling if, as was apparently the case here, they are within the petitioner's control. *See Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016) (holding that the extraordinary-circumstances prong, unlike the diligence prong, "is meant to cover matters outside [petitioner's] control"). Here, the state submitted undisputed prison disciplinary records and affidavits documenting that Smith was placed in "administrative segregation" on March 28, 2013 and then transferred to a maximum-security cell block on May 7, 2013 because he was "caught committing an aggravated sex offense" in violation of the prison's rules and regulations. Smith's lockdown was thus not a matter outside his control but a consequence of his own behavior, and it cannot, under these circumstances, create a basis for equitable tolling.

## IV.

We are removed from the tragic events underlying this case by numerous court proceedings and the span of more than three decades. Yet none of this is to say we do not find the circumstances of this case deeply concerning. Confronted with an apparently credible alibi, a jury convicted Smith of the murder of William Long on nothing more than the testimony of

three eyewitnesses, even though inconsistencies presented at trial created seemingly reasonable grounds to question the reliability of all three of those witnesses. But the untimeliness of Smith's petition precludes us from probing the merits of his claim. Accordingly, the judgment of the district court is AFFIRMED.