482 So.2d 178 (1986)
STATE of Louisiana
v.
Glen PAYNE.
No. KA-3568.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
Writ Denied May 1, 1986.
*179 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State of Louisiana.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant-appellant, Glen Payne.
Before BYRNES, WARD and HUFFT, JJ.
WARD, Judge.
An Orleans Parish Grand Jury indicted Glen Payne, age fifteen, charging him with the second degree murder of Freddie Martin, Jr., age eleven, a violation of La. R.S. 14:30.1. Payne filed several pretrial motions, including two which asked the District Court to suppress Payne's confession and to quash the indictment. After consideration of the evidence, the District Court denied both motions. Following trial, the jury found Payne guilty as charged and he received the mandatory sentence for second degree murder, life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Alleging three assignments of error in this appeal, Payne challenges: 1) denial of his motion to quash, 2) denial of his motion for a mistrial, and 3) the mandatory sentence for second degree murder when the offender is a juvenile. Additionally, the record has been reviewed for errors patent in the District Court proceedings. We affirm.
The record shows that at about 6:30 p.m. on the evening Martin was killed, Payne asked a friend if he could borrow a blue and white handkerchief because he felt like "fighting and harming someone." On that same night at approximately 8:45 p.m. Martin's mother gave him permission to go outside and he promised to return home by 9:30 p.m. At approximately 9 p.m., Monica Bonds, a friend of both Payne and Martin, saw them walking toward Canal Street near the intersection of Marais and Iberville Streets. At 10:30 p.m., in response to an emergency radio call, Officer Majorie Revolta of the New Orleans Police Department drove to Claiborne Avenue across from the Superdome, and found emergency medical technicians huddled around a black male child who was pronounced dead at the scene. A blue and white handkerchief was wrapped around the boy's neck and his watch was stopped at 10:05 p.m. Martin's grandmother identified his body.
Around 2 a.m. Payne turned himself in to the juvenille authorities who contacted Officer Patrick Jones of the Homicide Division of the New Orleans Police Department. After Payne's mother and aunt arrived at the station, Officer Jones advised Payne of his constitutional rights in the presence of his mother. Payne and his mother both signed a waiver of rights form, and Payne then made a statement to Officer Jones. He stated that he first rammed Martin's head into the bridge support under the Claiborne Overpass and then stomped his head into the ground several times. When Martin became unconscious, Payne wrapped his handkerchief around Martin's neck and choked him for about ten minutes. Then a man appeared who chased Payne until he disappeared into Hotel Dieu Hospital. Payne stated that he killed Martin because Martin and his cousin had robbed him at gunpoint the day before, taking sixty dollars which belonged to Payne's mother. In response to this statement, Payne's mother stood up and yelled that the sixty dollars was "on his back" because Payne had on new clothes.
*180 Dr. Monroe Samuels, a forensic pathology expert in the Orleans Parish Coroner's Office, performed an autopsy on the body of Freddie Martin, and his conclusions corroborated Payne's statement. Dr. Samuels determined the cause of death was strangulation by the handkerchief which at the time of the autopsy was still wrapped tightly around the neck. Due to the fashion in which the handkerchief was folded, Dr. Samuels stated that someone would have had to pull on the handkerchief constantly for a period of three to five minutes for clinical death to occur because there was no knot to hold the handkerchief. Dr. Samuels also found several bruises on the top of Martin's head.
Payne's first assignment asserts the District Court erred in denying his motion to quash which alleged the District Court had no jurisdiction over him. Specifically, he argues Art. 5 Sec. 19 of the Louisiana Constitution and La.R.S. 13:1570 unconstitutionally deprived him of due process by requiring that a juvenile charged with second degree murder must be tried the same as an adult offender in the Criminal District Court, without first having a hearing to determine if he should be tried as a juvenile in juvenile court. Our Supreme Court rejected an identical argument in State v. Perique, 439 So.2d 1060 (La.1983). Hence, this assignment is without merit.
Payne's second assignment argues that the District Court Judge should have ordered a mistrial when the prosecutor on redirect examination of a State witness, Payne's mother, solicited an improper response referring to Payne's juvenile record. Payne further asserts that the prosecutor knew in advance what the mother's response would be.
The record indicates that during cross examination of Payne's mother, his counsel asked her if she had had a telephone conversation with the prosecutor recently. She responded that they had spoken the night before trial. He then asked her if the prosecutor had asked how she would describe Payne at trial. After her response, the defense counsel then asked:
"If I were to ask you the question what type of child was Glen, what would you answer?" The prosecutor objected to this question and the Court told Payne's counsel that he was treading on very thin ground. Defense counsel responded that he was trying to establish whether the prosecutor had tried to influence the mother's testimony. The Trial Judge allowed the question and after her response, the defense counsel asked the mother if the prosecutor had instructed her to say nice things about Glen. The mother testified that the prosecutor had told her not to say too many nice things about Payne because it would appear she was trying to gain the sympathy of the jury. Payne's counsel then asked the mother several questions about Payne: "Was he a good student? Did he receive certificates for good scholarship? When, if at all, did you start having problems with Glen?"
During redirect examination of the mother, the prosecutor questioned her about the telephone conversation: "What did you tell me [in our previous conversation] about [your son's] bad aspects?" Payne's mother responded that he had runaway and juvenile records. The District Court Judge sustained the objection by Payne's counsel but refused his request for a mistrial. This refusal was followed by an admonition to the jury to disregard the mother's testimony.
Conceivably, as the State contends, the question was proper and the answer admissible to rebut questions asked by defense when defense counsel attempted to show the good character of Payne. Further, the question may be viewed as explaining the subject first broached by defense counsel's questions of "problems with Glen." When the Trial Court sustained the objection, obviously the Court found the question improper and the answer inadmissible as evidence. Assuming for the present that the question and answer were improper, the question is whether the Court erred by only admonishing the jury instead of declaring a mistrial.
*181 La.C.Cr.P. art. 770(2) mandates a mistrial when the judge, district attorney or a court official during trial or in argument refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. However, a state witness is not a "court official"; therefore, Payne's reliance on Art. 770 and State v. Arnaud, 448 So.2d 235 (La.App. 1st Cir.1984) is misplaced. State v. Manuel, 408 So.2d 1235 (La.1982). Rather, the applicable article is La.C.Cr.P art. 771 which states:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
....
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Thus, while an order of mistrial was not required, the Trial Judge unquestionably may have ordered a mistrial if not satisfied that an admonition was sufficient. While solicited and responsive remarks made by a witness in response to questions of the prosecutor may require reversal of a conviction, State v. Perry, 420 So.2d 139 (La.1982), a mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to a defendant which effectively deprives him of a fair trial. C.Cr.P. art. 921; State v. Edwards, 420 So.2d 663 (La.1982). Considering the context of the question and even assuming the answer"runaway and juvenile records"to be inadmissible, we cannot say the Trial Court erred by only admonishing the jury and denying a mistrial, or that, because of the remarks, Payne was denied a fair trial. Rather under these circumstances, we find that any prejudice resulting from the mother's remark was cured by the Trial Judge's admonition to the jury.
We likewise find no merit in Payne's third assignment that the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence is unconstitutionally cruel and excessive under the state and federal constitutions when the defendant is a juvenile convicted of second degree murder. Life imprisonment is not an unconstitutionally excessive penalty for the crime of second degree murder, State v. Parker, 416 So.2d 545 (La.1982), even where the accused is a juvenile. State v. Lively, 457 So.2d 1236 (La.App. 1st Cir.1984). Nonetheless, mandatory sentences are subject to judicial review for excessiveness. State v. Foley, 456 So.2d 979 (La.1984). In Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009-3010, 77 L.Ed.2d 637 (1983), the Supreme Court said: "a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishment for crimes.... But no penalty is per se constitutional." In Foley our Supreme Court discussed the factors listed in Helm which must be considered in deciding whether any sentence is constitutionally infirm or excessive. It concluded the mandatory punishment of life imprisonment without benefit of probation, parole or suspension of sentence imposed upon the fifteen-year old Foley for the crime of aggravated rape was not unconstitutionally cruel, unusual or excessive. Although Foley argued that his age required a less severe sentence, the Court disagreed because he had recently escaped from a juvenile home, had a juvenile record and was the principal aggressor in the crime. The Court concluded: "The circumstances here do not militate *182 against the legislature's determination that fifteen-year old aggravated rapists are to be treated as adults, without varying the punishment according to the age of the accused." Foley, 456 So.2d at 983. The uncontroverted facts of this casePayne's admission of singlehandedly knocking unconscious an eleven year old child, strangling him to death, and fleeing from the scenedictate the same result our Supreme Court reached in Foley. Accordingly, we do not find the sentence imposed on Payne to be out of proportion to the crime for which he has been convicted. For these reasons, Payne's conviction and sentence are affirmed.
AFFIRMED.