550 So.2d 899 (1989)
STATE of Louisiana, Appellee,
v.
Billy BARLOW, Appellant.
No. 20,774-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
E. Roland Charles, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Monroe, Charles L. Brumfield, Asst. Dist. Atty., Bastrop, for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
MARVIN, Judge.
Having been convicted by a jury of 2d degree murder of his roommate, Barlow appeals, contending that he was so intoxicated (more than .26 grams percent blood alcohol) when the killing occurred, the jury could not have rationally found beyond a reasonable doubt that he had the specific intent to kill or cause great bodily harm. Barlow also complains the mandatory sentence (life, without benefit of parole, probation, or suspension) is unconstitutionally "cruel and excessive."
We affirm.

FACTS
The victim, Massey, had lived with Barlow for about a month in Barlow's Bastrop apartment. Neighbors saw them drinking intoxicants together for more than four hours before the killing occurred. Both appeared to be drunk, Barlow slightly more than Massey. Blood tests after the killing confirmed that they were.
During a 1 ½ hour visit by a neighbor, Barlow repeatedly insulted, cursed and derided Massey outside their apartment. When Massey temporarily went inside, Barlow told the neighbor that Massey was "stupid ... crazy ..." and that "I'm going to have to get rid of him, he's going to have to go." Barlow made this statement during the first hour of the neighbor's visit while Massey and Barlow continued to drink.
The neighbor's visit continued for about 30 minutes after her boyfriend joined her. The boyfriend joined the conversation and shared beer with Massey and Barlow before *900 he and his girlfriend retired to her apartment about 8:45 p.m.
Shortly after 10 p.m. the neighbor and her boyfriend heard several pistol shots being fired in Barlow's apartment. She said four or five. He said six. They were afraid to come outside her apartment to use a neighbor's telephone. They kept watch, however, on Barlow's apartment.
Within 20 or so minutes the police arrived. The police dispatcher said he received a call at 10:40 p.m. from one who would not give his telephone number or identify himself. The caller suggested that the dispatcher "might want to" send a police car and ambulance to "211 Dalton, Apartment 3" (Barlow's apartment and address) because he had "just killed someone." The voice sounded "like a white male." Barlow later admitted that he made the telephone call.
Massey was found dead on his back on the floor of the apartment near the door. He was clutching a cigarette in one hand and lighter in the other. There was no sign of a struggle. Barlow was in his wheelchair in the same room near an eating bar or counter, on which lay Barlow's revolver and the remainder of the meal that Barlow had been eating. Six fired cartridges were found in the pistol. Massey was found to have been shot five times with the pistol.
Barlow stated to the several investigating police officers in his apartment: "I'm glad [he's dead]. Now I won't have the s o_ a b____ anymore ... jumping on me and taking my social security check ... I shot him, I meant to shoot him ... I won't have to feed the s o_ a b____ no more." These several witnesses testified that Barlow appeared to be drunk, had bloodshot eyes, slurred speech, smelled of alcohol, and gave a rambling explanation that Massey had "beat him" over money to buy whiskey and that he "wasn't going to beat him tonight." Barlow said he shot Massey "six times" and clearly exclaimed several times that he meant to shoot him. The shots were not fired in constant succession but in bursts of one or more shots, with a pause between each burst.
While acknowledging that Barlow appeared to be under the influence of alcohol, these several witnesses (the neighbor, her boyfriend, and four police officers) described Barlow's speech and conduct before and after the killing in such terms as coherent, rational, understanding, aware of what he was saying and what he had done.
One detective, on rebuttal, said there was no significant difference between Barlow's speech and appearance during the trial from the night of the murder except that Barlow's eyes were not bloodshot during trial.
The jury gave little weight or credence to Barlow's explanation that he remembered only that Massey had verbally and physically threatened him and that he did not know how he responded to the threats and did not remember seeing or talking to the neighbor or to the police or firing the pistol.

SPECIFIC INTENT
This element may be found only when the circumstances of the killing "indicate that [Barlow] actively desired the prescribed criminal consequences [Massey's death or great bodily harm] to follow [Barlow's] act [of firing the pistol at Massey]..." LRS 14:10(1); 30.1. The circumstances [Barlow's speech and conduct before and after the killing] strongly establish that Barlow had the specific intent to kill or inflict great bodily harm. It was the State's burden to prove this beyond a reasonable doubt. LRS 15:271.
Barlow's intoxication, however, is an affirmative defense if his intoxication has precluded the presence of the element of specific criminal intent to kill or cause great bodily harm. LRS 14:15(2). State v. Gipson, 427 So.2d 1293 (La.App. 2d Cir. 1983). It was Barlow's burden to prove this by a preponderance of the evidence. See and compare State v. Salas Martinez, 524 So.2d 871 (La.App. 3d Cir.1988), writ denied, affirming a 2d degree murder conviction where the defendant's blood alcohol content, used as an affirmative defense, was .29 grams percent.

*901 SUFFICIENCY OF EVIDENCE
The jury had the initial responsibility of determining whether the State proved the element of specific intent beyond a reasonable doubt. If the initial determination was in favor of the State, the jury had to determine whether it was more probable than not that Barlow's intoxication precluded him from actively desiring that his shooting the pistol at Massey would cause Massey death or great bodily harm.
Under the sufficiency-of-evidence review standard, we must review the evidence or circumstances in the light that most favorably supports the jury's verdict and determine whether the conclusions of the jury, with respect to the State's burden and, in this case, Barlow's burden, can be deemed to be rational and reasonable. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and its Louisiana progeny.
Barlow's statements to his neighbor two or more hours before the killing ("I'm going to have to get rid of him, he's going to have to go"), when interpreted in the light of his admissions after the killing ("I shot him six times, I'm glad he's dead, I meant to shoot him") are legally sufficient to allow a rational, logical, and reasonable mind to conclude beyond a reasonable doubt that Barlow actively desired that his shooting his pistol at Massey would cause death or great bodily harm to Massey.
These same circumstances are also legally sufficient to allow the same rational mind to decide to reject, as unbelievable and unreasonable, Barlow's testimony that he was intoxicated to such a degree that he did not know or remember who he saw, what he did or said, other than to simply react, in some way that he does not remember, to what he said was Massey's threatening words and conduct inside the apartment. In this respect, the jury, assigning credibility and weighing the evidence, rationally determined that the preponderance of that evidence did not establish that Barlow's intoxication precluded his specific intent to cause death or great bodily harm to Massey.

THE SENTENCE ASSIGNMENT
The life sentence, without benefit of probation, parole, or suspension, for 2d degree murder is mandatory. In this circumstance, the trial court need not consider sentencing guidelines in CCrP Art. 894.1. The assertion that such a sentence constitutes cruel and unusual punishment has been "consistently rejected." State v. Parker, 416 So.2d 545 (La.1982), and cases cited therein.

DECREE
Barlow's conviction and sentence are AFFIRMED.