655 So.2d 636 (1995)
STATE of Louisiana, Appellee
v.
Jason Michael PILCHER, Appellant.
No. 27,085-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*637 Michael Small and Phyllis Mann, Alexandria, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge and Mike Henry, Dist. Atty., Natchitoches, for appellee.
Before SEXTON, LINDSAY and STEWART, JJ.
LINDSAY, Judge.
The defendant, Jason Michael Pilcher, appeals his convictions and sentences for two counts of second degree murder. For the following reasons, we affirm.

FACTS
On August 17, 1993, the fifteen year old defendant and a companion, Brandy Louise Wiley, also fifteen years of age, ran away together from their Shreveport homes. The two walked to Keithville, Louisiana where *638 they stole an automobile, a loaded .38 cal. revolver and an unloaded .22 cal. pistol.
They drove south on Interstate Highway 49 and exited onto State Highway 6 in Natchitoches Parish to purchase gasoline. They then turned onto an unpaved road. The defendant lost control of the car and drove into a ditch.
The defendant, armed with the .38 cal. revolver, and Wiley, armed with the .22 cal. pistol, walked back to the paved highway. The defendant agreed to call his brother to come and get them. They knocked on the door of a residence and asked to use the telephone. Their request was denied. The two walked on to the next house and knocked on the door.
Mrs. Phyllis Albritton answered the door and agreed to allow the defendant to use the telephone. A cordless phone was brought to the defendant on the front porch by Mrs. Albritton's eleven year old son, Justin. Upon Wiley's request for a drink of water, two glasses of ice water were brought to the defendant and Wiley by Mrs. Albritton's thirteen year old daughter, Amanda.
The defendant was unable to reach his brother because the line was busy. Then, without warning and totally without provocation, the defendant pulled the .38 cal. revolver from under his shirt and shot Mrs. Albritton in the head, killing her instantly. Justin ran to his room and Amanda ran out the back door of the house.
The defendant followed Justin Albritton to his room. Justin grabbed for his pellet gun in an apparent attempt to defend himself. The defendant fatally shot Justin in the neck.
The defendant then exited the back of the house and fired at Amanda Albritton as she ran across a pasture. None of the bullets hit Amanda. She was able to reach her grandparent's house and call law enforcement officials.
The defendant and Wiley took the Albritton's truck, returned to I-49 and began travelling south. After they saw numerous law enforcement vehicles headed toward the Albritton home, they threw the guns from the vehicle and exited the Interstate. After an all-night manhunt, the defendant and Wiley were arrested.
The defendant was charged with two counts of second degree murder. Because he was fifteen years old, he was tried as an adult as required by LSA-Ch.C. Art. 305(B). Due to the extensive publicity connected with the incident in Natchitoches Parish, venue for the defendant's trial was changed to Caldwell Parish.
At trial, the defendant was found guilty as charged of two counts of second degree murder. The court then transferred the proceedings back to Natchitoches Parish for sentencing. The court imposed the mandatory sentences for second degree murder, life imprisonment without benefit of parole, probation or suspension of sentence. The court also ordered that the sentences be served consecutively. The defendant appealed, primarily attacking his sentences.

CONSTITUTIONALITY
The defendant does not deny that he committed the murders in this case. However, he argues that the trial court erred in denying his motion to quash the indictment against him.
On August 26, 1993, the grand jury returned an indictment charging the defendant with two counts of second degree murder. On January 14, 1994, the defendant filed a motion to quash in the trial court, arguing that the "Louisiana scheme for charging, adjudicating and sentencing fifteen year old children accused of homicide" is unconstitutional. The trial court held a hearing and then denied the motion on March 15, 1994.
The defendant then applied for supervisory writs to this court, arguing that the trial court erred in failing to grant his motion to quash. The defendant also filed his writ application simultaneously with the Louisiana Supreme Court.
The writ application filed in this court contained most of the arguments raised by the defendant in this appeal. The defendant essentially contended that the statutory scheme for treating as adults those juveniles accused of certain crimes is unconstitutional because it denied him the opportunity, at any *639 stage of the proceedings, to assert his youth in order to show that he was less culpable than an adult.
On March 31, 1994, this court denied the writ application, finding that, on the showing made, the trial court did not err in its denial of the motion to declare unconstitutional our state's statutory scheme for dealing with fifteen-year-olds accused of second degree murder. On the same date, the Louisiana Supreme Court also denied the writ application filed in that court.
Although we have previously considered the constitutional issues raised by the defendant in his writ application, we are not precluded from reconsideration of those issues on appeal. State v. Humphrey, 412 So.2d 507 (La.1982).
On appeal, the defendant asserts that the Louisiana statutory scheme for charging, adjudicating and sentencing fifteen year olds accused of homicide is unconstitutional. The defendant contends that his constitutional rights to due process and equal protection were violated in that, at no time in the proceeding was he allowed an opportunity to assert his youth to show that he was less culpable than an adult. He argues that the Louisiana statutory scheme under which he was charged as an adult with two counts of second degree murder, violates his rights to due process, equal protection, the presumption of innocence, an impartial trial, presentation of a defense, and freedom from cruel and unusual punishment. The defendant contends that Louisiana law provides no procedure to present evidence to show that he should not be treated as an adult and was not fully responsible for his actions. The defendant further argues that neither the judge nor the jury were allowed at any point to consider whether the defendant was in fact capable of forming criminal intent in the same manner as an adult or understanding the consequences of his actions as would an adult. The defendant does not argue that he was constitutionally entitled to a transfer hearing before being tried as an adult, but complains that at no stage of the proceedings was there an opportunity to assert his youth. These arguments are meritless.

Louisiana's Statutory Scheme
At the time of the commission of these offenses, the Louisiana Constitution of 1974, Art. 5 § 19 provided:
The determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law. However, the legislature may (1) by a two-thirds vote of the elected members of each house provide that special juvenile procedures shall not apply to juveniles arrested for having committed first or second degree murder, manslaughter, aggravated rape, armed robbery, aggravated burglary or aggravated kidnapping, and (2) by two-thirds vote of the elected members of each house establish a procedure by which the court of original jurisdiction may waive special juvenile procedures in order that adult procedures shall apply in individual cases. The legislature, by a majority of the elected members of each house, shall make special provisions for detention and custody of juveniles who are subject to the jurisdiction of the district court pending determination of guilt or innocence.[1]
This provision grants the legislature much discretion in the treatment of a person under seventeen who has been charged with any of the enumerated serious offenses. The legislature has seen fit to exercise some, but not all, of the power granted by this provision. Prior to 1992, LSA-R.S. 13:1570 set forth the jurisdiction of juvenile courts. Section (A)(5) of that statute provided:
Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:
(5) Who violates any law or ordinance, except a child who, after having become fifteen *640 years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape, or a person who, after becoming sixteen years of age or older, is charged with having committed armed robbery, aggravated burglary, or aggravated kidnapping. Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall retain jurisdiction over his case, even though the child pleads guilty to, or is convicted of, a lesser included offense, and a plea to, or conviction of a lesser included offense shall not revest the court exercising juvenile jurisdiction of such a child.
By this provision, the legislature saw fit to absolutely refuse adult treatment of persons younger than fifteen, even though the source provision in the state constitution allowed such treatment. Further, fifteen-year-olds were to be automatically treated as adults only for purposes of the most serious offenses enumerated in the constitution. Adult treatment of a fifteen-year-old for other offenses required a transfer hearing. LSA-R.S. 13:1571.1. Finally, only those 15-year-olds actually charged with one of the four listed offenses were automatically transferred to the adult system; the constitution permits such treatment of a youth who is arrested for such crimes.
In 1992, the legislature enacted the Children's Code in an effort to consolidate all the procedures by which youths encounter the legal system. The criminal procedure articles dealing with juveniles were rewritten and included in this code. At the time the present offenses were committed, the treatment of 15-year-olds charged with second-degree murder was governed by LSA-Ch.C. Art. 305(B), which provided:
B. (1) When a child is fifteen years of age or older at the time of the commission of first degree murder, second degree murder, or aggravated rape, he is subject to the exclusive jurisdiction of the juvenile court until either:
(a) An indictment charging one of these offenses is returned.
(b) The juvenile court holds a continued custody hearing pursuant to Articles 819 and 820 and finds probable cause that he committed one of these offenses, whichever occurs first.
(2) Thereafter, the child is subject to the exclusive jurisdiction of the appropriate court exercising criminal jurisdiction for all subsequent procedures, including the review of bail applications, and the child shall be transferred forthwith to the appropriate adult facility for detention prior to his trial as an adult.[2]
LSA-Ch.C. Art. 305 is functionally identical to its repealed source provision, LSA-R.S. 13:1570. The principal difference is the removal of manslaughter from the list of offenses for which transfer to district court is mandatory. Further, a provision has been incorporated into the scheme which requires action to be taken within three days of the juvenile's arrest. Automatic transfer to district court is provided whenever (a) an indictment is returned or (b) a continued custody hearing is held pursuant to LSA-Ch.C. Arts. 819 and 820, whichever occurs first. Because the present statutory scheme is largely unaltered, the jurisprudence interpreting former LSA-R.S. 13:1570(A)(5) remains relevant for consideration of the constitutionality of LSA-Ch.C. Art. 305.

Jurisprudence on Constitutionality
The constitutionality of Louisiana's statutory scheme regarding juveniles accused of serious crimes has previously been considered. In State v. Perique, 439 So.2d 1060 (La.1983), a sixteen year old was arrested and charged with armed robbery. The trial court granted the defendant's motion to quash the indictment against him on grounds that, as applied, the statute vesting the district court with jurisdiction over the juvenile defendant resulted in an unconstitutional denial of due process and equal protection. The Louisiana Supreme Court rejected this argument.
*641 The Louisiana Supreme Court reasoned that the juvenile courts have jurisdiction over only those juveniles who do not fall within specific enumerated categories. The de facto transfer to adult court occurs for juveniles accused of certain specific enumerated offenses. The court found that there are no statutory rights of which the defendant was being deprived. Once charged with an enumerated felony, it is not a question of transfer of jurisdiction, rather, the juvenile court's jurisdiction is automatically divested. This divestiture is not a matter of discretion on the part of the juvenile court or the district attorney, but is controlled by the statute defining the jurisdiction of the juvenile courts.
The court further reasoned that, because the defendant was not being deprived of important statutory rights, the question is not one of due process, but of whether the statute is a valid exercise of the state's police powers. The court found that the statute was a valid exercise of that power.
In State v. Leach, 425 So.2d 1232 (La. 1983), a juvenile defendant argued that the legislature could not constitutionally create classes of juveniles for treatment as adults determined by the age and offense committed by the juvenile. The defendant argued that the age limitations of the statute are arbitrary, capricious and unreasonable and are not rationally related to any legitimate state interest.
The Louisiana Supreme Court rejected this argument. The court found that the classifications embodied in the statute are not arbitrary, capricious or unreasonable. These classifications bear a rational relationship to the legitimate state interest of protecting its citizens by exposing older minors who are accused of committing serious and violent felonies to the usual procedures and sanctions of the state's criminal justice system.
In Leach, the defendant also claimed that even though he was sixteen, his mental age was twelve and that the use of his chronological age to determine whether the district or juvenile court has jurisdiction violates his equal protection rights. The court also rejected that argument, finding that the designation of chronological age to set the parameters of classifications affords the most reasonable, fair, and even-handed method available to the state.
In State v. Foley, 456 So.2d 979 (La.1984), the Louisiana Supreme Court considered the issue of whether a hearing prior to the transfer of a juvenile to an adult court is constitutionally required. A fifteen-year-old, charged with aggravated rape, filed a motion to quash the indictment against him, arguing that he was entitled to a hearing prior to being tried as an adult. The court found that no such hearing was constitutionally required. The court stated that the statute automatically divesting the jurisdiction of the juvenile court in such circumstances is a valid exercise of the state's police power. Further, classifications by age and seriousness of the offense are not arbitrary and capricious; they bear a rational relationship to the state's interest in giving the public enhanced protection from more violent felons. The court also stated that the legislature has decided that fifteen year olds, charged with certain offenses, should be treated as adults and, within this statutory framework, the district attorney controls the criminal prosecution by determining whom, when, and how he will prosecute.
See also State v. Payne, 482 So.2d 178 (La.App. 4th Cir.1986), State v. Gachot, 609 So.2d 269 (La.App. 3d Cir.1992), State v. Perow, 616 So.2d 1336 (La.App. 2d Cir.1993), finding that a hearing before transfer to adult court is not constitutionally required.

Defendant's Argument on Constitutionality
The defendant essentially argues that his constitutional rights were violated by being charged as an adult, because the Louisiana statutory scheme contains no mechanism for the court or jury to consider the mitigating effect of the defendant's age in evaluating his culpability and in imposing sentence.[3]
*642 In this context, the defendant cites several United States Supreme Court opinions dealing with the culpability of juvenile defendants tried as adults. The defendant relies upon Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), for the proposition that less culpability should attach to a crime committed by a juvenile than a comparable crime committed by an adult. In Thompson, the court opined that inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult. The court went on to state that the reason juveniles are not trusted with the privileges and responsibilities of an adult also explains why their irresponsible conduct is not as morally reprehensible as that of an adult.
The defendant also cites Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) in which the court stated that youth is more than a chronological fact. It is a time and condition of life when a person may be more susceptible to influence and to psychological damage. The court stated that our history is replete with laws and judicial recognition that minors, especially in their early years, generally are less mature and responsible than adults. The court noted that, particularly during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment expected of adults.
While somewhat relevant, these cases deal with the imposition of the death penalty on minors, a feature not present in this case. Therefore, these cases are inapposite to the constitutional arguments raised by the defendant in this case where the death penalty is not at issue.
The central feature of execution is that once imposed, it cannot be withdrawn. While the United States Supreme Court has reasoned that a fifteen-year-old may not be executed under the evolving standards of decency that mark the progress of a maturing society, it is entirely another matter to refuse to apply positive law to separate from society a double murderer merely because he is fifteen years old. The legislature, pursuant to the mandate given in the Louisiana Constitution has determined that those persons aged fifteen and older are of sufficient understanding to be tried as adults for certain serious crimes such as second degree murder. We do not find that this scheme violates any constitutional rights of the defendant, on its face, or as applied.
Therefore, on the showing made in this case, the defendant has failed to show that the Louisiana scheme for charging, adjudicating and sentencing fifteen year old defendants charged with second degree murder is unconstitutional.

ILLEGAL AND UNCONSTITUTIONAL SENTENCES
The defendant further contends that the sentences imposed, life imprisonment without benefit of parole, probation or suspension of sentence, for both counts of second degree murder, to be served consecutively, are illegal and invalid because they rest on an unconstitutional scheme. This argument is meritless. As discussed above, we find that the statutory scheme for charging, adjudicating and sentencing fifteen year old persons charged with and convicted of second degree murder is not unconstitutional. Therefore, the argument that the defendant's sentences are illegal because based on an unconstitutional scheme must fall.

EXCESSIVE SENTENCES
The defendant argues that the imposition of two consecutive life sentences, without *643 the benefit of parole, probation or suspension of sentence, (LSA-R.S. 14:30.1(B)) is cruel, unusual and excessive as applied to him. This argument is meritless.
The Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Sec. 20 of the Louisiana Constitution prohibit the imposition of a penalty that is cruel and unusual. In Solem v. Helm, 463 US 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States supreme Court overturned a life sentence ordered to be served without benefit of parole, probation or suspension of sentence, imposed upon a defendant convicted for the seventh time for felony check fraud. In so holding, the Court stated:
In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional.
The Court went on to state that whether a given sentence is proportional to a crime depends upon:
[O]bjective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.
The Louisiana Supreme Court in State v. Foley, 456 So.2d 979 (La.1984), conducted this analysis of the mandatory life-without-benefit sentence imposed on a 15-year-old convicted of aggravated rape and determined that the harsh sentence nevertheless did not violate the Eighth Amendment.
The U.S. Supreme Court has recently modified Eighth Amendment standards in favor of the states. In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the Court held that the Solem v. Helm, analysis was only required in cases where the sentence imposed was "grossly disproportionate" to the offense.
The Louisiana constitution provides that a sentence must not be cruel, unusual, or excessive. This additional criteria of review, even for mandatory sentences, reduces the force of defendant's argument that his age is never considered in the process used to convict and sentence him. Although the legislature is free to impose any punishment for a given crime, the courts have the authority to say whether that punishment violates the constitution. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993) citing State v. Sepulvado, 367 So.2d 762 (La. 1979). It is clear that this review extends to life-without-benefit sentences imposed upon 15-year-olds. Foley and Payne, supra. See also State v. Creel, 508 So.2d 859 (La.App. 5th. Cir.1987), writ denied, 532 So.2d 171 (La.1988). Because sentences are subject to Eighth Amendment review as well as review for excessiveness, Louisiana's treatment of 15-year-olds accused of homicide does not entirely disregard their age.[4]
In general, a life-without-benefit sentence for second-degree murder does not violate the Eighth Amendment. State v. Barlow, 550 So.2d 899, 901 (La.App. 2d Cir. 1989). Further, it is not facially unconstitutional, even under Solem v. Helm, to automatically apply such a sentence to a 15-year-old convicted of second degree murder or aggravated rape. Payne, Foley, supra. Before this court must answer the question of proportionality under Solem v. Helm, it must decide whether the sentence imposed upon Pilcher is "grossly disproportionate" to his offense. Harmelin, supra.
In this case, the life-without-benefit sentences are not grossly disproportionate to the defendant's crimes. Utterly without provocation, the defendant murdered two people. One of his victims was an 11-year-old boy. The circumstances of the murder were extraordinary. In the words of the trial court, Phyllis Albritton gave the defendant "ice water on a hot August day" and *644 her kindness was repaid with a bullet to the head. After watching his mother be viciously murdered, 11-year-old Justin Albritton fled in terror for his life. In a futile attempt to defend himself, Justin tried to attack the defendant with a pellet gun. Unfortunately, the child was unable to repel the defendant. In addition, even though not charged with the offense, the defendant also attempted to kill Amanda Albritton by firing at her as she fled.
A more senseless crime can hardly be imagined. The Albrittons were killed as a result of their kindness toward the defendant and his companion. Separation of this defendant from society for the rest of his life is not "grossly disproportionate" to the heinous offenses committed by him. Further, the state was precluded from charging the defendant with two counts of first degree murder and from seeking the death penalty in this case only because the defendant was fifteen years old at the time the offenses were committed.
Based upon the facts in this record, the sentence imposed by the trial court is tailored to both the offender and the offenses and is not excessive.[5]

CONCLUSION
For the reasons stated above, we affirm the convictions and sentences of the defendant, Jason Michael Pilcher.
AFFIRMED.
NOTES
[1] This section of the state constitution was amended by Acts 1994, 3rd Ex.Sess. No. 152 § 1, which became effective November 3, 1994. Because the amendment went into effect after the date of the present offense, the prior version of the provision is applicable.
[2] Acts 1994, 3rd Ex.Sess. Nos. 15 and 39 consolidated this section with the previous section (A) and added aggravated kidnapping as a basis for automatic transfer of a fifteen-year-old to adult court.
[3] The defendant argues that, if permitted, he would have presented evidence of factors showing his diminished culpability due to his age. However, he did present this information to the jury. This issue was properly raised by the defendant's plea of insanity and the defendant was allowed to produce copious amounts of evidence comprising over 300 pages of the transcript, as evidence of his mental capacity. The court and jury were aware of the defendant's age as well as evidence of all the factors the defendant argued to demonstrate that he was not as culpable as an adult and could not form the requisite criminal intent necessary for conviction of these crimes. The defendant's argument that he was unconstitutionally prohibited from asserting his youth and decreased culpability is simply not supported by the record in this case. See and compare State v. Gachot, 609 So.2d 269 (La.App. 3d Cir. 1992), holding that evidence of diminished capacity due to youth was properly excluded where the insanity defense was not asserted.
[4] Further, LSA-R.S. 15:574.4(B) allows for parole eligibility for those persons serving life sentences after the sentence has been commuted to a fixed term of years.
[5] The defendant filed a motion to reconsider in the trial court pursuant to LSA-C.Cr.P. Art. 881.1. In that motion, the defendant raised the excessiveness of his sentences, enumerating the factors he contended supported that claim. However, the defendant did not argue that the sentences were excessive because they were imposed consecutively. We note that under some circumstances, consecutive life sentences have been upheld as not excessive. State v. Jett, 419 So.2d 844 (La.1982); State v. Williams, 445 So.2d 1264 (La.App. 3d Cir.1984), writ denied 449 So.2d 1346 (La.1984); State v. Dennard, 482 So.2d 1067 (La.App. 3d Cir.1986); State v. Barker, 628 So.2d 168 (La.App. 2d Cir.1993), writ denied 93-3194 (La. 3/25/94), 635 So.2d 236. In light of the unusually heinous nature of these offenses, the trial court's finding that concurrent sentences would deprecate the seriousness of the killings, and that the sentences should be imposed consecutively is correct and will not be altered.