JiBROWN, Judge.
A jury found defendant, James Daniel Tol-bird, guilty of second degree murder. The trial court imposed the mandatory sentence of life imprisonment without benefit of probation, parole or suspension of sentence. On appeal, defendant urges insufficiency of the evidence and error in the trial court’s failure to excuse a juror who was allegedly related to the victim. Finding no merit to either assignment of error, we affirm.

Facts

On September 21, 1994, at some time after 3:45 p.m., a group of young people, including Shawn Marie Burgess, Eric Fontana and Antwan McMillan, were at defendant’s mobile home in Monroe, Louisiana. Several of the young men were drinking shots of whiskey. Defendant stated that he was drunk; however, Shawn and Antwan testified that defendant had no trouble walking and that they were able to understand his speech. Antwan stated that defendant was not drunk; however, in a prior statement, he stated that defendant was drunk.
Defendant told Eric that if the latter ever “snitched” on him (apparently about smoking pot), defendant would kill him. Defendant then pulled out a .357 revolver, pointed it at Eric and chambered one round. Shawn and Antwan thought it was a joke, because defendant frequently played with guns.
Defendant pointed the revolver at a stereo system, pulled the trigger four times, then skipped the fifth chamber without discharging the bullet. He then pointed the gun barrel at Eric’s head and pulled the trigger four times. He put the end of the barrel against the top of Eric’s head and asked, “Should I shoot him?” Shawn and Antwan answered, “Yes.” Defendant pulled the trigger and shot Eric in the head.
Antwan then stated, “Jim, you shot Eric.” Defendant replied, “No shit.” Antwan left to call the police. Defendant moved Eric’s body from the living room Rto a bedroom. He locked the door to the bedroom, then prevented Shawn from leaving, telling her that everything would be okay if she would keep quiet. Defendant then left the trailer.
The police responded to the scene and found the victim, Eric Fontana, dead in the locked bedroom. The .357, which was unloaded, was in the kitchen. A spent shell casing was on the kitchen floor and several blood-soaked paper towels were in a trash bag. An empty Kentucky Deluxe Whiskey bottle was on the kitchen counter. Another spent shell casing was found under the entertainment center in the living room.
Four hours later, around 8:00 p.m., police located defendant, who did not appear to be under the influence of alcohol. Defendant stated that he had hidden in an old drive-in movie while waiting for the officers to leave the area. He then planned to leave for California.
Defendant was arrested and charged with second degree murder. At trial, defendant chose neither to testify nor to call witnesses. The jury, by an 11 to 1 vote, found defendant guilty as charged. Defendant appeals his conviction and mandatory sentence of life imprisonment.

Discussion

Assignment o f Error No. 1

Defendant asserts that the evidence was insufficient to support his conviction of second degree murder. Specifically, defendant argues that the state failed to prove that he had the requisite intent because of his alleged intoxication.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime ^proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d *417 Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
La. R.S. 14:30.1 A(l) defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
La. R.S. 14:15(2) provides that an offender’s intoxicated condition at the time of the commission of an offense is immaterial, except where the circumstances indicate that the intoxicated condition precluded the presence of a specific criminal intent. In such a ease, the intoxicated condition constitutes a defense to a prosecution for that crime.
Intoxication is an affirmative defense. The burden of proof by a preponderance of the evidence rests upon defendant. State v. Barlow, 550 So.2d 899 (La.App. 2d Cir.1989).
Specific intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). Specific intent must be inferred from the circumstances of the transaction and the actions of the defendant. State v. \jGraham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Knowles, 598 So.2d 430 (La.App. 2d Cir.1992).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
In this case, the evidence, viewed in the light most favorable to the prosecution, is sufficient to support defendant’s conviction of second degree murder.
Defendant threatened to kill the victim, Erie Fontana. Defendant placed a bullet in his .357 revolver and repeatedly pulled the trigger on the empty chambers to rotate the cylinder to the armed chamber. He aimed the revolver at the victim’s head, then asked his friends whether he should kill Eric. Defendant pulled the trigger. There was no showing that it was an accident.
Defendant cleaned up the crime scene, unloaded the revolver, put bloody paper towels in the trash can and told Shawn that it would be all right if she would just be calm. All of these actions show that defendant had the presence of mind to know what he was doing and what he had done.
The evidence was sufficient for a rational juror to believe that the killing was intentional. Defendant, who neither testified nor called any witnesses, did not prove by a preponderance of the evidence that he was so intoxicated as to preclude the requisite specific intent. This assignment of error lacks merit.

Assignment of Error No. 2

Defendant asserts that the trial court erred in refusing to excuse juror Frances Swanson because of her alleged kinship with the victim, Eric Fontana. According to defendant, Ms. Swanson was related to Fonta-na by marriage; he relies upon La.C.Cr.P. art. 797(3), which provides that a defendant may challenge |5a juror for cause on the ground that a relationship by marriage between the juror and the victim of the offense “is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict.”
The mere fact that there is such a relationship, however, is not sufficient ground for a challenge for cause. The facts must reasonably lead to the conclusion that the relationship would influence the juror in arriving at a verdict. State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977); State v. Bland, 558 So.2d 719 (La.App. 3d Cir.1990), writ denied, 565 So.2d 440 (La.1990).
Frances Swanson was alleged to be the victim’s father’s brother’s wife’s half-sister [i.e. the half-sister of the victim’s aunt by marriage]. Defense counsel concedes that he did not ask any questions of Ms. Swanson *418 concerning her relationship to any of the persons involved in the case, but only discovered the possible relationship after Ms. Swanson had been seated on the jury.[1] At that time, defense counsel moved to exclude Ms. Swanson.
The trial court’s per curiam reflects that when the judge conducted the initial voir dire of the jury panels, he asked whether any potential jurors knew the victim. Ms. Swanson responded negatively. The court found that the purported relationship, “which was never shown conclusively, was too attenuated to require dismissal of’ Ms. Swanson.
Defense counsel presented no evidence, but assumed that there was a relationship and argued that, “there’s no way that she can be fair.” We find neither an abuse of discretion nor a clear showing of error in this case. The alleged relationship was attenuated and was not a relationship by marriage between the juror and the victim. There is no showing to support defendant’s ^assertion that this distant relationship would influence the juror in arriving at a verdict.
No errors patent were noted.
For the reasons set forth above, defendant’s conviction and mandatory life sentence are AFFIRMED.

. One of the juror’s relatives alerted the prosecutor of the juror's connection to the victim; the prosecutor then told defense counsel.